**Joseph BOCKO, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 58A01–0109–CR–346.

Court of Appeals of Indiana.

June 11, 2002.

Ross G. Thomas, Dillon Law Office, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Joseph Bocko appeals his convictions after a jury trial of possession of cocaine, a Class C felony; possession of marijuana, a Class A misdemeanor; and reckless possession of paraphernalia, a Class A misde-

meanor. He raises five issues on appeal, which we restate as:

1.) whether there was sufficient evidence to support Bocko's conviction of reckless possession of paraphernalia;

2.) whether the trial court erred in admitting evidence in the form of heroin, when Bocko was not charged with possession of heroin;

3.) whether the trial court erred in declining to declare a mistrial after the prosecutor made references to Bocko's failure to call certain witnesses;

4.) whether the trial court properly considered aggravating and mitigating circumstances in sentencing Bocko; and

5.) whether Bocko's sentence was manifestly unreasonable.

We affirm in part and reverse in part.[1]

## FACTS AND PROCEDURAL HISTORY

Bocko and Frank Lamagna were the only two persons gambling at a table at a casino in Rising Sun. The dealer working at that table saw Lamagna pass to Bocko a plastic bag containing white powder. The dealer reported the incident to her supervisor, and three state police troopers assigned to the casino were called to view the surveillance video of the incident. The troopers went to the table and asked Bocko to come to their office. As Bocko gathered his belongings, he threw three bags on the floor.

Bocko and Lamagna were arrested and the bags recovered. One bag contained cocaine, the other heroin, and the third marijuana. When Bocko was searched, police found a straw and a plastic bag in his pocket. Both the straw and the bag

---

1. We heard oral argument on May 10, 2002, at Goshen High School in Goshen, Indiana. We gratefully acknowledge the school's hospi- tality and we commend counsel for their capable advocacy.

were coated with a white residue, which was found to contain cocaine.

Bocko was sentenced to eight years for possession of cocaine, one year for possession of marijuana, and one year for reckless possession of paraphernalia. The sentences were to be served concurrently.

## DISCUSSION AND DECISION

### 1. *Reckless Possession of Paraphernalia*

In reviewing sufficiency of the evidence, we will affirm a conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, and without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Rogers v. State*, 741 N.E.2d 395, 396 (Ind.Ct.App.2000), *reh'g denied, trans. denied* 753 N.E.2d 16 (Ind.2001). When a conviction is based on circumstantial evidence, we will not disturb the verdict if the factfinder could reasonably infer from the evidence presented that the defendant is guilty beyond a reasonable doubt. *Id.*

A person who recklessly possesses a raw material, an instrument, a device, or other object that is to be used primarily for: (1) introducing into the person's body a controlled substance; (2) testing the strength, effectiveness, or purity of a controlled substance; or (3) enhancing the effect of a controlled substance; commits reckless possession of paraphernalia, a Class A misdemeanor. Ind.Code § 35–48–4–8.3(c). A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation

from acceptable standards of conduct. Ind.Code § 35–41–2–2(c). It does not appear that our courts have addressed the recklessness standard in the context of possession of drug paraphernalia.[2]

Bocko notes there is no evidence the straw was ever out of his pocket until the police removed it. Neither was there evidence of the harm that might result from his possession of the straw in his pocket, nor that his possession of the straw showed his disregard of the harm that might result from his conduct or that it involved a substantial deviation from acceptable standards of conduct. Rather, the evidence demonstrated only that Bocko possessed the straw. Mere possession without a showing of recklessness is a Class A infraction. Ind.Code § 35–48–4–8.3(a).

The State appears to argue recklessness can be inferred from the evidence that the straw was found in Bocko's pocket. It cannot. A trier of fact may reasonably infer that a defendant knows the contents of his own pockets. *Collins v. State*, 549 N.E.2d 89, 95 (Ind.Ct.App.1990), *reh'g denied, trans. denied*. From this premise the State asserts, without explanation, that "It is also reasonable to infer that Defendant cut the straw himself, and carried it for the purpose of using it to ingest cocaine ... It is clear that if such an item is carried, it will be used to ingest illegal drugs .... It could be inferred that the straw was used to ingest the contents" of an empty plastic bag containing cocaine residue found in Bocko's pocket. (Br. of Appellee at 5.) Deliberately carrying the straw, the State asserts, demonstrates Bocko's plain, conscious, and unjustifiable disregard of harm that might result from

---

**2.** The prohibition against "reckless" possession of drug paraphernalia appears to be unique to Indiana.

his conduct; therefore, the evidence is sufficient to show reckless possession of paraphernalia in the form of the straw.

■ It is true, as indicated above, that when a conviction is based on circumstantial evidence we will not disturb the verdict if the factfinder can reasonably infer from the evidence presented the defendant's guilt beyond a reasonable doubt. However, an inference is not reasonable when it rests on no more than speculation or conjecture. *Hayden v. Paragon Steakhouse,* 731 N.E.2d 456, 458 (Ind.Ct.App.2000). We addressed a similar invitation to infer guilt in *Bass v. State,* 512 N.E.2d 460, 464 (Ind.Ct.App.1987). There, two individuals were convicted of visiting a common nuisance after they were found sitting on a couch in a residence. A drug-smoking device was on a coffee table in front of the couch. The device was cold when the police officer picked it up and the individuals on the couch did not appear to be under the influence of drugs. We determined that "[i]n order to conclude [the defendants] knew that the controlled substances were used at Cullison's residence, we must infer that they saw the contents of the paraphernalia and recognized the contents as controlled substances. Under the facts of this case, such an inference is not reasonable." *Id.*

We decline to accept the State's invitation to infer from the fact Bocko had a straw in his pocket that: 1) Bocko cut the straw himself, 2) that he did so for the purpose of ingesting cocaine, 3) that a cut straw carried in one's pocket will be used to ingest cocaine, and 4) Bocko used the straw for that purpose. There is insufficient evidence that Bocko's possession of

the straw was "reckless." Thus, we reverse that conviction.

### 2. *Admission of Heroin*

■ We review the denial of a motion to suppress evidence in a manner similar to allegations of insufficient evidence. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Washington v. State,* 740 N.E.2d 1241, 1243 (Ind.Ct.App. 2000), *trans. denied* 753 N.E.2d 7 (Ind. 2001). However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, in reviewing a denial of a motion to suppress, we must also consider the uncontested evidence most favorable to the defendant. *Id.* Trial courts have wide latitude in weighing the probative value of evidence against the danger of unfair prejudice, and we review that determination for abuse of discretion. *Ingram v. State,* 715 N.E.2d 405, 408 (Ind.1999).

■ One of the three bags Bocko threw to the floor as he prepared to go to the police office contained heroin. The heroin was admitted into evidence over Bocko's objection, even though he was not being tried for possessing heroin.[3]

■ Bocko asserts the heroin was not relevant and should have been excluded on that ground under Ind. Evidence Rule 402 (evidence that is not relevant is not admissible). We disagree. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid. R. 401. Evidence of happenings near in time and place

---

**3.** Shortly before trial, the State received the test results on the contents of the three bags. It was not until then that they were aware that one of the bags contained heroin. The trial court denied the State's motion for leave to amend the information to add a new count for possession of heroin.

that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted. *Minnick v. State*, 544 N.E.2d 471, 480 (Ind.1989), *reh'g denied.* Because the heroin evidence served to complete the story of Bocko's crime, we cannot say the trial court abused its discretion in admitting it.

 Even if relevant, Bocko argues, the heroin evidence should have been excluded under Evid. R. 404(b), which limits the admissibility of other crimes, wrongs, or acts. The following test is applied in deciding whether such challenged evidence is admissible: (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the person's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.[4] In short, if the evidence bears on some issue other than criminal propensity and clears the balancing hurdle of Rule 403, it is admissible. *Roop v. State*, 730 N.E.2d 1267, 1270 (Ind.2000).

 Bocko asserts the heroin evidence was prejudicial in that the jurors might be more likely to convict Bocko of the crimes charged because they believed he might have committed an even more serious offense that was not charged. The State does not address whether the heroin evidence was unfairly prejudicial. Instead, it argues the admission of the evidence was harmless because there was ample additional evidence that Bocko possessed marijuana and cocaine.

 The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood the questioned evidence contributed to the conviction. *Cook v. State*, 734 N.E.2d 563, 569 (Ind.2000). In light of the testimony, physical evidence, and video surveillance evidence of Bocko's guilt, we are convinced there is no substantial likelihood that the erroneously admitted evidence contributed to the jury's verdict. Therefore, even if the trial court erred by allowing the questioned testimony into evidence, the error was harmless.

### 3. The Mistrial Motions

 The decision to grant or deny a motion for mistrial lies within the discretion of the trial court, and its determination will be reversed only where an abuse of discretion can be established. *West v. State*, 758 N.E.2d 54, 56 (Ind.2001). To prevail, the appellant must establish that he was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is determined by the probable persuasive effect on the jury's decision. *Id.*

 Bocko chose not to present a case in chief, and he made his mistrial motions during the rebuttal portion of the State's closing argument.[5] The first motion came

---

4. That rule provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

5. One motion was made after the prosecutor stated "There's no evidence presented to you to show you that there's any medical condition of why [Bocko's co-defendant] should have syringes. You haven't heard one iota of

testimony about it." *Id.* at 734. That comment referred only to Bocko's co-defendant. Bocko does not explain how he could have been prejudiced by the remark, except to refer to "the repeated and deliberate references to failure of the defendant to disprove her [sic] case[.]" *Id.* at 14. We decline to hold that the trial court abused its discretion in denying Bocko's mistrial motion that was premised on

after the prosecutor noted that Bocko had not presented witnesses to challenge the testimony of the State's forensic chemist: "Now, they didn't come here with any expert witnesses to say that what [the chemist] had was a bunch of bunk ... We didn't have any expert witness on that." (Tr. at 730–731.) The second came after the prosecutor commented that the floor boss on duty at the casino the day Bocko was arrested was not called: "And I think if Eleanor had anything to say, she'd be here." *Id.* at 733. Bocko characterizes those statements as improperly suggesting that a defendant who has chosen to present no witnesses nevertheless had the burden of proof "by inquiring in closing argument why the defendant did not call a witness to testify on his behalf." (Br. of the Appellant at 13.)

▮▮▮ The State does not explicitly argue the remarks were proper;[6] rather, it characterizes the remarks as "response to the Defendant's arguments concerning the same matters." (Br. of Appellee at 9.) In closing argument, Bocko's counsel did discuss at length the State's failure to call the floor boss who was on duty that day: "Eleanor appears, to me, to be standing right there and looking at Joe Bocko ... But we didn't hear from Eleanor, did we? Eleanor's not a witness in this case ... She's the closest with the best angle, prob-

ably the only person that could see what they say supposedly happened. She didn't come in to tell you that that's what she saw. They didn't bring her in to talk to you." (Tr. at 695–96.)

Bocko's counsel also referred to the testimony by the State's forensic chemist: "He tested something with a screen. I don't know what it was, I don't know whose case it came from, I don't know which officer submitted it, but he tested something with a screen." (Tr. at 722.) "[The chemist] said well, the way we do it is, the scale is calibrated—once a year somebody comes in, and then once a month somebody comes in. He didn't say he tested it before and after it's [sic] use. So you don't know if that 4.67 grams is accurate." *Id.* at 724.

To the extent the State's remarks did respond to Bocko's statements in closing argument, they were permissible. In *Carter v. State*, 738 N.E.2d 665, 677 (Ind. 2000), Carter argued the trial court committed fundamental error when it permitted the prosecutor to refer to witnesses he (the prosecutor) did not call. Our supreme court rejected that argument, noting that the prosecutor's comment was clearly a reply to a comment in defense counsel's closing argument: "[T]he State could have called as many witnesses as they wanted

---

a statement concerning only Bocko's co-defendant.

**6.** We share Bocko's concern about the prosecutor's course of conduct in this case. While, as explained below, we do not reverse, we remind the prosecutor that it is improper to suggest that a defendant shoulders the burden of proof in a criminal case. *Dobbins v. State*, 721 N.E.2d 867, 874 (Ind.1999). In *Dobbins*, the prosecutor made one remark during argument that Dobbins argued "effectively shifted the burden of proof onto [him]." *Id.* Our supreme court determined that "[g]iven the brevity of the prosecutor's statement, coupled with the trial court's admonishment and its

preliminary and final instructions," the remarks, "even if improper, did not have a probable persuasive effect on the jury." *Id.* Similarly, in *Chubb v. State*, 640 N.E.2d 44, 49 (Ind.1994), the court found that a single remark to the same effect was *de minimus* and overcome by the instructions.

Here, by contrast, Bocko's prosecutor made multiple remarks during the course of closing argument, which remarks all suggested Bocko had an obligation to prove his case. Had these remarks not been directly responsive to statements made in closing argument by Bocko's counsel, they might well have amounted to reversible error.

to testify . . . but how many did they bring in and who did they bring in?" The court characterized the prosecutor's statement as "clearly aimed at rebutting this attack and explaining that any other possible witnesses would bring little to the case." *Id.* The challenged statements in the case before us could be characterized as rebutting Bocko's attack and explaining that other witnesses, specifically the floor boss, would bring little to the case. We cannot say the trial court abused its discretion when it denied Bocko's motions for mistrial.

### 4. *Aggravating and Mitigating Circumstances*

■ Sentencing lies within the discretion of the trial court. *Thacker v. State,* 709 N.E.2d 3, 9 (Ind.1999), *reh'g denied.* If a trial court uses aggravating or mitigating circumstances to enhance the presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *Id.* The trial court is not required to find the presence of mitigating circumstances. *Fugate v. State,* 608 N.E.2d 1370, 1374 (Ind.1993). When a defendant offers evidence of mitigators, the trial court has the discretion to determine whether the factors are mitigating, and it is not required to explain why it does not find the proffered factors to be mitigating. *Taylor v. State,* 681 N.E.2d 1105, 1112 (Ind.1997). The trial court's assessment of the proper weight of mitigating and aggravating circumstances and the appropriateness of the sentence as a whole is entitled to great deference and will be set aside only upon a showing of a manifest abuse of discretion. *Thacker,* 709 N.E.2d at 10. Even a single aggravating circumstance may support the imposition

of an enhanced sentence. *Ajabu v. State,* 722 N.E.2d 339, 344 (Ind.2000).

Bocko asserts the trial court found improper aggravating circumstances and failed to recognize and weigh mitigating circumstances. The trial court found three aggravating circumstances: 1) the risk Bocko would commit another crime; 2) the nature and circumstances of the crime; and 3) Bocko's need of rehabilitative treatment best provided by commitment to a penal facility. It found no mitigating factors.

■ The trial court's determination that there was a risk Bocko would commit another crime was premised on evidence that Bocko had been involved with illegal drugs during this case and prior to his sentencing. Bocko had been under surveillance and had been found with cocaine in Ohio after his arrest on the present charges and some four months before his trial. Charges were filed against Bocko in Ohio about a month after his trial and were pending at the time of the sentencing hearing. We cannot say the trial court abused its discretion when it took into account this aggravator. *See Oberst v. State,* 748 N.E.2d 870, 880 (Ind.Ct.App. 2001) (trial court did not abuse its discretion in relying on the risk that defendant may commit another crime of a similar nature as an aggravating factor when testimony at trial established only one incidence of sexual intercourse but it was clear that the defendant had engaged in inappropriate sexual behavior with the victim on more than one occasion).

■ The "nature and circumstances of the crime" that the trial court found to be an aggravator included the evidence that Bocko had heroin as well as marijuana and cocaine in his possession when he was arrested, and that Bocko tried to hide the evidence of the crimes by throwing the bags containing the drugs to the floor.

This is a statutory aggravator, Ind.Code § 35–38–1–7.1(a)(2), but Bocko asserts it was improper here because "the trial court cited no specific facts or circumstances which set this crime apart from that [sic] which are generally associated with this criminal act." (Br. of the Appellant at 16.)

Bocko is correct that a trial court may not use a material element of the offense as an aggravating circumstance, *Lemos v. State,* 746 N.E.2d 972, 975 (Ind. 2001). However, we decline to hold that possession of an additional different drug, *i.e.,* heroin, and the act of attempting to hide evidence are to be considered "material elements" of any of the crimes with which Bocko was charged. Application of this aggravator was not an abuse of discretion.

Bocko asserts the need for corrective rehabilitative treatment best provided by a penal facility was an improper aggravator, as the court provided no reason why such treatment was appropriate. For this aggravator to support an enhanced sentence, the court must give a specific and individualized reason why the defendant is in need of correctional treatment that can best be provided by a period of incarceration in excess of the presumptive sentence. *Ajabu,* 722 N.E.2d at 343.

In fact, the court did state a reason for applying this aggravator: "I'm basing that on the continued pattern of activity occurring following the arrest in these charges and while he was released on bond . . . he has learned nothing from his arrest on this offense and would possess an even larger quantity of cocaine in an offense occurring shortly before trial on this matter." (Tr. at 102.) In *Johnson v. State,* 725 N.E.2d 864, 868 (Ind.2000) our supreme court found this aggravator properly applied where the trial court noted the defendant had previously, and unsuccess-

fully, been placed on juvenile probation and adult probation, had been to prison, and was on parole when he committed the crime. This aggravator was properly applied to Bocko.

Bocko argues the trial court should have found as mitigating circumstances his heart condition, the hardship his incarceration would cause to his family, and the lack of a significant criminal history. Bocko acknowledges that the trial court is not obliged to accept a defendant's contentions as to what constitutes a mitigating circumstance, but still asserts that it was "clear error to refuse to acknowledge their presence in this case." (Br. of the Appellee at 17.)

In fact, the trial court did acknowledge the presence of Bocko's medical condition, the lack of significant criminal history, and the hardship to Bocko's family. The court was presented with lengthy testimony and numerous exhibits concerning Bocko's proffered mitigators. The court explicitly stated that it found Bocko's criminal history to be neither an aggravating nor a mitigating circumstance. (Tr. at 100.) It explicitly stated it did not find the hardship to Bocko's family to be a mitigating circumstance. *Id.* at 103. Rather, it found Bocko's "continuing involvement in these types of offenses," *id.* at 103–04, to be a hardship for his family. Finally, the court explicitly stated Bocko's medical condition was not a mitigating factor because "he is continuing to engage in criminal activity[.]" *Id.* at 104. The trial court did not abuse its discretion in declining to find those circumstances to be mitigating.

### 5. *Manifestly Unreasonable Sentence*

Bocko was sentenced to the maximum term on all counts. The sentences were to run concurrently, so Bocko's total sentence was eight years, the maximum

sentence for the possession of cocaine charge.

 Sentencing decisions rest within the sound discretion of the trial court, and this court will reverse only upon a manifest abuse of that discretion. *Catt v. State,* 749 N.E.2d 633, 641 (Ind.Ct.App. 2001), *reh'g denied, trans. denied* 761 N.E.2d 422 (Ind.2001). If the sentence is authorized by statute, it will not be revised or set aside unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Id.* We must refrain from merely substituting our opinions for those of the trial court. *Id.*

Bocko correctly notes that "a maximum sentence permitted by law should be reserved for the very worst offenders," (Br. of the Appellant at 18), citing *Buchanan v. State,* 699 N.E.2d 655, 657 (Ind.1998).[7] Bocko points out that he was 58 years old when he was sentenced, he had recently been hospitalized for a heart condition, his prior criminal record consisted of one misdemeanor, and he was convicted of possessing 4.67 grams of cocaine.

 In determining whether a defendant is among the "very worst offenders" we concentrate less on comparing the defendant's case to others and more on focusing on the nature and extent of the offense for which the defendant is being sentenced and what it reveals about his character. Otherwise, "one could always envision a way in which the instant case could be worse . . . and the maximum sentence would never be justified." *Brown v. State,* 760 N.E.2d 243, 247 (Ind.Ct.App. 2002), *trans. denied.* In light of the evidence before the trial court, including evidence of Bocko's continued criminal activi-

ty subsequent to the charges for which he was being sentenced, we cannot say the imposition of the maximum but concurrent sentences was manifestly unreasonable.

## CONCLUSION

We vacate Bocko's conviction of reckless possession of paraphernalia and affirm Bocko's convictions of and sentences for possession of cocaine and possession of marijuana.

BROOK, C.J., and BARNES, J., concur.

---

7. We note that Bocko received the maximum sentence for his conviction of possession of cocaine, but that his additional sentences for possession of marijuana and reckless possession of paraphernalia were to run concurrent-

ly with the cocaine charge. Bocko therefore did not receive "a maximum sentence permitted by law" to the extent the sentences did not run consecutively.