Ted L. **VERTNER,** Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0203–CR–215.

Court of Appeals of Indiana.

Aug. 20, 2003.

Michael C. Borschel, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code § 35–44–3–3.

2. Ind.Code § 35–44–3–3.

3. Ind.Code § 35–48–4–8.3.

## OPINION

MAY, Judge.

Ted Vertner appeals his convictions after a jury trial of (1) resisting law enforcement by fleeing in a vehicle, a Class D felony;[1] (2) resisting law enforcement by fleeing, a Class A misdemeanor;[2] and (3) reckless possession of paraphernalia, a Class A misdemeanor.[3] Vertner raises three issues on appeal, which we restate as:

1. Whether the trial court erred by allowing the State to admit, as "course of police work" testimony, hearsay statements from an anonymous victim/informant regarding an alleged robbery;

2. Whether the trial court erred by failing to rule on Vertner's objection to improper statements made by the prosecutor during closing argument; and

3. Whether the trial court erred by failing to give a requested instruction regarding possession of paraphernalia as a Class A infraction.

We affirm in part and reverse in part.[4]

## FACTS

Two Indianapolis Police Department officers were on an early morning training patrol in a marked patrol car when they encountered a car in the middle of a street. A male pedestrian stood next to the passenger side of the car, which was occupied by three men. As the patrol car approached, the vehicle took off at high speed. The pedestrian flagged down the police car and reported that he had just been robbed.

4. We heard oral argument on April 2, 2003 at John Adams High School in South Bend, Indiana. We thank the school for its hospitality and commend counsel for the quality of their appellate advocacy.

One of the officers told the pedestrian to remain at that location, and the officers left with full lights and siren engaged in pursuit of the fleeing vehicle. The patrol car was able to follow the subject car closely until it stopped suddenly. Vertner and the other two occupants exited the car and fled on foot. The police chased Vertner and apprehended him. The officers discovered a crack pipe in Vertner's pocket when they searched him. Vertner admitted at trial that the pipe was his, that he had used it that evening to smoke crack cocaine, and that he intended to use it in the future to smoke crack cocaine.

## DISCUSSION AND DECISION

1. *Hearsay statements as course of police work testimony*

■ Vertner asserts the trial court committed reversible error by denying his pre-trial Motion *in Limine* to preclude the State from offering as "course of police work" testimony hearsay statements from an anonymous informant/victim regarding an alleged robbery.

■ The trial court's discretion to admit or exclude evidence is broad, *Hardiman v. State*, 726 N.E.2d 1201, 1203 (Ind. 2000), and it will not be reversed absent an abuse of that discretion. *Id.* A trial court abuses its discretion when its evidentiary ruling is clearly against the logic, facts and circumstances presented. *Id.*

Hearsay is evidence of a statement made out of court that is offered in a judicial proceeding to prove the truth of a matter asserted in the statement. Ind. Evidence Rule 801(c). We note initially that the statement Vertner challenges is not properly characterized as hearsay. The testimony to which Vertner objected was the following statement by one of the police officers: "The vehicle then turned on its lights and took off at a high rate of speed. The subject that was standing outside flagged me down and I approached him. After talking with him very briefly, I then took off after the vehicle in order to investigate an alleged robbery." (Tr. at 131.) While the officer's statement strongly suggests the allegation of a robbery was made by the person to whom the officer was speaking, the testimony does not explicitly contain a statement made by anyone other than the officer who was testifying. It therefore was not hearsay. Because Vertner's objection was based solely on hearsay grounds, we need not address the merits of Vertner's argument on appeal.

■ Even if the statement may be characterized as hearsay, its admission was harmless error. When the admissibility of an out-of-court statement received by a police officer during the course of an investigation is challenged as hearsay, we first determine whether the testimony describes an out-of-court statement that asserts a fact susceptible of being true or false. *Hernandez v. State*, 785 N.E.2d 294, 298 (Ind.Ct.App.2003), *trans. denied* (citing *Craig v. State*, 630 N.E.2d 207, 211 (Ind.1994)). If the statement contains no such assertion, it cannot be hearsay and the objection should accordingly be overruled. *Id.*

■ If the statement does contain an assertion of fact, we consider the evidentiary purpose of the proffered statement. If it is to prove the fact asserted, is not from a witness or a party, and there are no applicable hearsay exceptions, the statement is inadmissible as hearsay. *Id.* If the statement is offered for a purpose other than to prove the truth of the matter asserted, we consider whether the fact to be proved is relevant to some issue in the case and whether the danger of unfair prejudice that may result from its admission outweighs its probative value. *Id.*

Relevance is the tendency to make a fact of consequence to the determination of the action more or less probable. *Id.* If the fact sought to be proved under the suggested non-hearsay purpose is not relevant, or if it is relevant but its danger of unfair prejudice substantially outweighs its probative value, the hearsay objection should be sustained. *Id.* at 298–99. This rationale is applicable in analyzing the admissibility of evidence the State argues is admissible because it merely describes the course of police investigation. *Id.* at 299.

Officer Hessong's statement that the police chase was initiated by the pedestrian's report that a robbery had occurred is a fact susceptible of being true or false. The second part of the test requires consideration of the evidentiary purpose of the statement. The State contends the evidentiary purpose of the statement was not to prove that a robbery had in fact occurred but to explain the subsequent conduct of the police officers. In *Maxey v. State*, 730 N.E.2d 158 (Ind.2000), Maxey argued "course of police work" testimony that he was apprehended out of state was improperly admitted evidence. Because, as here, the State asserted that the evidentiary purpose of the testimony was to explain subsequent conduct of the detective, the court considered the relevance of the detective's course of police work and whether the danger of prejudice in admitting this evidence substantially outweighed its probative value.

The court concluded the probative value was low because the defendant's out-of-state apprehension was not a contested issue. On the other hand, the testimony was relevant as circumstantial evidence of the defendant's guilt. The court noted that when course of police work testimony consists entirely of inadmissible evidence, the danger of unfair prejudice might well outweigh the probative value. *Id.* at 162.

However, the court finally determined any error in the admission of the out-of-court statements was harmless because the statements were "cumulative of other direct, non-hearsay testimony to Defendant's flight." *Id.*

Similarly, in *Hernandez*, 785 N.E.2d at 300, we determined the relevance of evidence of "course of police work" testimony was slight when the genesis of the investigation was not relevant to any contested issue in the case. We held, however, that the prejudicial impact was great where the defendant was charged with promoting prostitution and the challenged testimony indicated the police began their investigation because they had received complaints about prostitution connected with the business.

In the case before us, whether a robbery had occurred is not a contested issue. However, the prejudicial impact of the statement suggesting the police pursued Vertner and his companions because of a report they had committed a crime is great. The testimony did not provide evidence Vertner was guilty of any of the charges against him, and the reason the police pursued Vertner was not a contested issue at trial. The testimony therefore had, at most, little probative value. The prejudicial effect was great, as it suggested Vertner had been a participant in an uncharged crime. The motion *in limine* therefore should have been granted.

Although admission of the officer's statement was error, it was harmless error. The testimony was presented only once, it was immediately objected to, and the judge admonished the jury that the statement was not offered to prove the truth of the matter asserted. Further, ample evidence supported Vertner's conviction of resisting law enforcement by fleeing. The error was therefore harmless.

### 2. *Prosecutorial misconduct during closing arguments*

In reviewing claims of prosecutorial misconduct, we determine first whether the prosecutor committed misconduct and second, whether the alleged misconduct put the defendant in a position of grave peril. *Robinson v. State*, 693 N.E.2d 548, 551 (Ind.1998).

In her closing argument, the prosecutor stated, "What it comes down to is . . . the credibility of the witnesses. It's great defense strategy, we'll admit one, so that means we're telling the truth about everything else. But, ladies and gentlemen, that's not the truth." (Tr. at 129.) Vertner objected to the statement and both parties went off the record for a bench conference. The record does not reflect whether the trial court ruled on the objection, and the prosecutor resumed her closing argument.

Vertner asserts the trial court failed to either sustain his objection or to admonish the jury regarding the prosecutor's statement, and argues the lack of a proper curing admonition to the jury amounts to reversible error.[5] He further argues a mistrial must be granted if an admonition is not given or is not sufficient to cure the error.[6]

Vertner argues the prosecutor's statements amounted to improper personal opinion because they were conclusory and not based on analysis of the evidence admitted at trial. He suggests the prosecutor could have avoided improper personal opinions by prefacing her statements with the words "the evidence shows" as indicated by our supreme court in *Swope v. State*, 263 Ind. 148, 155, 325 N.E.2d 193, 196 (1975), *cert. denied sub nom. Swope v. Indiana*, 423 U.S. 870, 96 S.Ct. 135, 46 L.Ed.2d 100 (1975). The State argues the prosecutor was merely commenting about the credibility of the witnesses.

A prosecuting attorney may comment upon witness credibility during closing argument as long as the assertion is based upon reasons that arise from the evidence. *Quarles v. State*, 493 N.E.2d 1247, 1249 (Ind.1986). By contrast, it is improper for the prosecutor to state during trial a personal opinion as to the credibility of a witness. *Cox v. State*, 696 N.E.2d 853, 859 (Ind.1998), *reh'g denied.* The State notes the prosecutor characterized witness credibility by contrasting the testimony of Vertner and the police officers, but that she never expressed her opinion that Vertner was lying.

The prosecutor's statement "It's great defense strategy, we'll admit one, so that means we're telling the truth about everything else. But, ladies and gentlemen, that's not the truth" might well have been objectionable in isolation. However, the prosecutor explicitly preceded that statement with "What it comes down to is . . . the credibility of the witnesses." The jury therefore could not have taken the statement as anything other than a characterization of witness credibility and not as a personal opinion. We cannot say the trial court abused its discretion when it declined to declare a mistrial.

**5.** The record is also silent regarding whether the trial court admonished the jury. The State argues there is no evidence the court failed to rule on Vertner's objection or that Vertner requested an admonition or a mistrial. Therefore, it argues, because no admonition was given it is reasonable to infer none was requested. Accordingly, the State urges us to find Vertner waived the issue. We decline the invitation by the parties to find either waiver or reversible error in a silent record.

**6.** The record does not indicate whether Vertner requested a mistrial during the off-the-record bench conference.

### 3. *Reckless possession of paraphernalia*

 Vertner was charged with reckless possession of paraphernalia, a Class A misdemeanor. Reckless possession of paraphernalia is defined in Ind.Code § 35–48–4–8.3(c):

> A person who recklessly possesses a raw material, an instrument, a device, or other object that is to be used primarily for: (1) introducing into the person's body a controlled substance; (2) testing the strength, effectiveness, or purity of a controlled substance; or (3) enhancing the effects of a controlled substance; commits reckless possession of paraphernalia, a Class A misdemeanor.

Vertner tendered a final instruction on possession of paraphernalia, a Class A infraction, which the trial court declined to give. Ind.Code § 35–48–4–8.3(a) provides:

> A person who possesses a raw material, an instrument, a device, or other object that the person intends to use for: (1) introducing into the person's body a controlled substance; (2) testing the strength, effectiveness, or purity of a controlled substance; or (3) enhancing the effects of a controlled substance; in violation of this chapter commits a Class A infraction for possessing paraphernalia.

Vertner argues a separate instruction should have been given because the crime of possession of paraphernalia can be charged under two separate culpability levels and because subsection (a) is a lesser included offense of subsection (c).

However, we need not address whether failure to so instruct the jury was error because we find, *sua sponte*, that the State failed to prove Vertner's possession was "reckless."

In *Avant v. State,* 779 N.E.2d 538 (Ind. Ct.App.2002), we noted that subsections (a) and (c) differ with respect to the character of the possession. "The character of the possession proscribed in section (a) is straightforward: possession with intent to use. The character of the possession proscribed in subsection (c) depends on the meaning of 'recklessly.' " *Id.* at 542.

A person's conduct is reckless if it is done in "plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2(c).[7] In *Avant,* we held that "to obtain a conviction under subsection (c) requires more than a mere showing of possession such as would be sufficient to obtain a conviction under subsection (a)." *Avant,* 779 N.E.2d at 543.

We recently discussed the meaning of "recklessly" as used in Ind.Code § 35–48–4–8.3(c) in *Bocko v. State,* 769 N.E.2d 658 (Ind.Ct.App.2002), *reh'g denied, trans. denied* 783 N.E.2d 702 (Ind.2002). In *Bocko,* a straw and a plastic bag, both covered with a white powder, were found in one of the defendant's pockets. Like Vertner, Bocko was charged with reckless possession of paraphernalia under Ind.Code. § 35–48–4–8.3(c). We found the evidence demonstrated Bocko merely possessed a straw, not that he recklessly possessed it, as there was (1) no evidence the parapher-

---

7. We noted in *Bocko v. State,* 769 N.E.2d 658, 669 n. 2 (Ind.Ct.App.2002), *reh'g denied, trans. denied* 783 N.E.2d 702 (Ind.2002), that the prohibition against "reckless" possession of drug paraphernalia appears to be unique to Indiana. We further note that "reckless" acts are generally understood to be "[c]haracterized by the creation of a substantial and un-

justifiable risk of harm *to others*[.]" Black's Law Dictionary 1276 (Seventh ed.1999) (emphasis supplied). We express no opinion regarding whether the legislature could have intended to criminalize behavior that was done in "disregard of harm that might result" to the individual in possession of the paraphernalia and not to anyone else.

nalia was ever out of Bocko's pocket until the police removed it; (2) no evidence of the harm that might result from his possession of the straw in his pocket, and, (3) no evidence that his possession of the straw showed his disregard of the harm that might result from his conduct or that it involved a substantial deviation from acceptable standards of conduct. *Id.* at 664.

In the case before us, Vertner's admission would have provided ample evidence to support a charge of the Class A infraction of possession of paraphernalia. However, the State directs us to no evidence that the character of Vertner's possession was "reckless." The record does not reflect the pipe was out of Vertner's pocket until police removed it during the search incident to Vertner's arrest. Nor does the record include any evidence of the harm that might result from his possession of a pipe in his pocket, that his possession of the pipe showed his disregard of the harm that might result from having the pipe in his pocket, or that having a pipe in his pocket involved a substantial deviation from acceptable standards of conduct. We accordingly vacate Vertner's conviction of reckless possession of paraphernalia.

## CONCLUSION

The trial court's admission of hearsay "course of police work" testimony was harmless error, and the prosecutor's comment on witness credibility was not misconduct. However, the State did not offer sufficient evidence to support Vertner's conviction of reckless possession of paraphernalia. We affirm Vertner's convictions of resisting law enforcement but reverse his conviction of reckless possession of paraphernalia.

Affirmed in part and reversed in part.

BARNES, J., concurs.

BROOK, C.J., concurring with separate opinion.

BROOK, Chief Judge, concurring as to Issue III.

I agree with the majority's conclusion that the State presented no evidence that Vertner possessed the crack pipe recklessly, as that word is defined in Indiana Code Section 35–41–2–2(c). I write separately to urge the General Assembly to revisit and perhaps revise Indiana Code Section 35–48–4–8.3(c), as it is difficult to imagine a set of facts that would satisfy the elements of reckless possession of paraphernalia.

Indiana Code Section 35–48–4–8.3 reads as follows:

(a) A person who possesses a raw material, an instrument, a device, or other object that the person intends to use for:

(1) introducing into the person's body a controlled substance;

(2) testing the strength, effectiveness, or purity of a controlled substance; or

(3) enhancing the effect of a controlled substance; in violation of this chapter commits a Class A infraction for possessing paraphernalia.

(b) A person who:

(1) knowingly or intentionally violates subsection (a); and

(2) has a previous judgment or conviction under this section; commits possession of paraphernalia, a Class D felony.

(c) A person who recklessly possesses a raw material, an instrument, a device, or other object that is to be used primarily for:

(1) introducing into the person's body a controlled substance;

(2) testing the strength, effectiveness, or purity of a controlled substance; or

(3) enhancing the effect of a controlled substance; in violation of this chapter commits reckless possession of paraphernalia, a Class A misdemeanor. However, the offense is a Class D felony if the person has a previous judgment or conviction under this section.

In *Avant*, we noted that subsections (a) and (c) "differ with respect to the nature of the object possessed." *Avant,* 779 N.E.2d at 541.

Subsection (a) provides that it is a criminal offense to possess an object "that the person intends to use" for taking drugs. Subsection (c), on the other hand, criminalizes possession of an object "that is to be used primarily for" taking drugs. Thus, a person would violate subsection (a) by possessing an object that he intended to use in taking drugs, regardless of whether the object would be innocuous in a different context. The person's intent not the intrinsic nature of the object is the critical element. On the other hand, possession

of, for example, a crack pipe would constitute a violation of subsection (c), regardless of whether a person then harbored an intent to use it to take drugs. *Id.*

It would seem that in subsections (a) and (b) of the statute,[8] the legislature's primary intent was to criminalize the possession of otherwise innocent items, such as an alligator clip used to smoke a marijuana cigarette or an eyedropper used to test the purity of cocaine, where the possessor intended to use the item for one of the activities enumerated in subsection (a). In subsection (c) of the statute, it would appear that the legislature's primary intent was to criminalize the possession of not-so-innocent items such as crack pipes and marijuana bongs, regardless of whether the possessor intended to use the item for one of the activities enumerated in that subsection. *See id.* ("Thus, the difference between subsections (a) and (c) in this respect is that (a) focuses on the possessor's intent to use, whereas (c) focuses on the nature of the object itself.").[9] As wor-

---

**8.** I respectfully disagree with the *Avant* court's conclusions that "under both subsection (a) and (c), the defendant must knowingly possess an object" and that "recklessly" as used in subsection (c) "describes the manner of possession[.]" *Avant,* 779 N.E.2d at 542. Given subsection (b)'s specific mention of a knowing or intentional violation of subsection (a), I cannot conclude that the legislature also intended to apply the *mens rea* of "knowingly" to subsections (a) and (c). *See N.D.F. v. State,* 775 N.E.2d 1085, 1088 (Ind.2002) ("[W]e will not read into the statute that which is not the expressed intent of the legislature. As such, it is just as important to recognize what the statute does not say as it is to recognize what it does say.") (citation omitted); *see also Tipton County ex rel. Tipton County Council v. State ex rel. Nash,* 731 N.E.2d 12, 18 (Ind.Ct.App.2000) ("It is a well-recognized rule of statutory construction that, where a restriction is not general but is provided in a specific instance, application of the specific instance will not be carried into other

statements that do not provide such limitations."), *trans. denied.* In my view, possession of paraphernalia under Indiana Code Section 35–48–4–8.3(a) is a strict liability offense, but the State must prove that the defendant intended to use the object for one of the activities enumerated in that subsection. This evidentiary burden would preclude the conviction of a person who mistakenly donned another's jacket containing a cocaine-encrusted straw and did not intend to use the straw to ingest a controlled substance. I must also respectfully disagree with the *Avant* court's holding that "subsection (a) is a lesser-included offense of subsection (c)." *Avant,* 779 N.E.2d at 543. In my estimation, these subsections define two separate crimes.

**9.** *See* BLACK'S LAW DICTIONARY 322 (6th ed. 1990) (" 'Contraband per se' is property the mere possession of which is unlawful, while 'derivative contraband' is unlawful act.") (citation omitted).

thy and sensible as this objective might be, it is difficult to imagine that the mere possession of any such item (with the possible exception of certain sharp objects or volatile "raw materials") might result in "harm" as contemplated by the culpability statute. *See* Ind.Code § 35–41–2–2(c) ("A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.").

Although the *use* of a crack pipe might well result in harm, the mere *possession* of a crack pipe will rarely, if ever, do so, whether to the possessor or to others. If the legislature's intent is indeed to criminalize the possession of items "to be used primarily for" ingesting, testing, or enhancing the effect of controlled substances, regardless of whether the possessor intends to use them for these purposes, then perhaps it should consider making their possession a strict liability offense or, at the very least, criminalizing the "knowing" possession of these items instead.