**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TIMI S. SLOAT**
Kindig & Sloat, PC
Nappanee, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH M. BELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1311-CR-464 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1207-FA-42

**July 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On July 16, 2012, Appellant-Defendant Joseph M. Bell was pulled over for failing to use his turn signal. After being pulled over, Bell acted suspiciously. When an investigating officer walked around Bell's vehicle, the officer noticed a chemical smell coming from the vehicle and saw a baggie containing a white powdery substance and items used in manufacturing methamphetamine sitting in plain sight on the floorboard of the vehicle. A search of the vehicle revealed a methamphetamine lab and numerous items used in manufacturing methamphetamine. A subsequent search of Bell's apartment revealed additional items used in manufacturing methamphetamine. In addition, Bell told investigating officers that he regularly manufactured methamphetamine and that each time he did so, he manufactured four grams of methamphetamine.

On July 18, 2012, Appellee-Plaintiff the State of Indiana (the "State") charged Bell with Class A felony attempted dealing in methamphetamine. Following a bench trial, the trial court found Bell guilty as charged and imposed a thirty-three-year term of incarceration, with four years suspended to probation. On appeal, Bell contends that the trial court abused its discretion in admitting a portion of his statement to investigating officers. Bell also contends that the evidence is insufficient to sustain his conviction for Class A felony attempted dealing in methamphetamine. We affirm.

**FACTS AND PROCEDURAL HISTORY**

While on patrol during the morning hours of July 16, 2012, Corporal Dan Milanese of the Elkhart Police Department initiated a traffic stop after he observed a red Mercury Topaz

2

turn without signaling. When Corporal Milanese activated his police vehicle's emergency overhead lights, the driver of the vehicle, later identified as Bell, "kind of took off quickly," drove through an intersection, "ducked in behind" an apartment building, and parked the vehicle "haphazardly" in a parking lot behind the apartment building. Tr. p. 18. Bell exited the vehicle immediately after he parked and began to walk away. In light of Bell's actions, Corporal Milanese suspected that Bell might be attempting to flee from law enforcement and requested additional police assistance.

Corporal Milanese ordered Bell to return to his vehicle. Bell complied with this request. Corporal Milanese approached and determined that Bell was the only person inside the vehicle. Corporal Milanese requested Bell's driver's license and registration and explained why he initiated the traffic stop. Bell indicated that he "just forgot" to use his turn signal. Tr. p. 21.

During his encounter with Bell, Corporal Milanese observed that Bell was extremely nervous and that Bell's reaction was "much different" from what he typically observes in others. Tr. p. 21. In particular, Corporal Milanese noted that Bell's hands were "very, very shaky" and his breathing was rapid. Tr. p. 21. Bell clutched his chest and said "[M]y heartbeat. It's beating so fast. It's beating so fast." Tr. p. 21. Corporal Milanese also noted that Bell failed to respond appropriately to repeated questions. Due to concern for Bell's safety, Corporal Milanese asked Bell to exit his vehicle.

After arriving at the scene, Corporal Chad Odle, also of the Elkhart Police Department, observed that Bell appeared to be "very nervous." Tr. p. 37. Bell consented to

3

an outer body pat-down search, which revealed no weapons. Bell remarked to Corporal Odle that he thought he was going to jail.

As Corporal Odle stood near Bell's vehicle, he detected a chemical smell that seemed to be coming from inside the vehicle. Corporal Odle approached Bell's vehicle on the passenger side and could see a plastic baggie that contained a powdery substance, lithium batteries, and money sitting in plain sight on the floorboard of the driver's side of the vehicle. Based on his training and experience as a police officer, Corporal Odle knew that certain narcotics had the appearance of a white powdery substance and were packaged in plastic baggies. Corporal Odle also knew that lithium batteries could be used in the manufacture of methamphetamine.

After having noticed the above-stated items in plain sight, Corporals Milanese and Odle initiated a search of Bell's vehicle. During the search of Bell's vehicle, Corporals Milanese and Odle found several items used to manufacture methamphetamine in Bell's vehicle. These items include a Coleman fuel can, plastic baggies, crystal drain cleaner, sodium hydroxide, stripped lithium batteries and casings, a coffee filter containing white residue, cold packs, and four empty blister packs of pseudoephedrine. Corporals Milanese and Odle contacted the Elkhart Police Department drug unit and the Indiana State Police meth suppression team. Upon searching the vehicle, Detective Greg Harder of the Elkhart Police Department observed what he believed, based upon his training and experience, might be a methamphetamine lab. Bell was subsequently placed under arrest.

After obtaining a search warrant, officers also searched Bell's apartment, finding

4

numerous items used in or related to the manufacture of methamphetamine. These items included wire strippers, a coffee grinder that contained white residue, scales, a Coleman fuel can, a plastic Coke bottle,[1] plastic baggies, two full boxes of pseudoephedrine, two receipts, and crystal drain cleaner. Officers also found an orange box that contained glass tubes that had burn marks, coffee filters containing a white residue that field tested positive for methamphetamine, plastic baggies, and aluminum foil boats.

That same day, Bell gave a videotaped interview to Detective Tim Freel of the Elkhart Police Department in which he admitted that he had been manufacturing methamphetamine for about one year. Bell described the process he used to cook the methamphetamine, in detail, specifically recounting that he used "two and two only" boxes of pseudoephedrine at a time. State's Ex. 1. Bell stated that each batch of methamphetamine consistently produced four grams of finished methamphetamine.

On July 18, 2012, the State charged Bell with Class A felony attempted dealing in methamphetamine. The trial court conducted a bench trial on August 30, 2013, after which it took the matter under advisement. On October 10, 2013, the trial court found Bell guilty as charged. On November 15, 2013, the trial court sentenced Bell to a thirty-three-year term of incarceration, with four years suspended to probation. This appeal follows.

**DISCUSSION AND DECISION**

On appeal, Bell contends that the trial court abused its discretion in admitting certain

---

[1] Detective Greg Harder testified that methamphetamine can be manufactured inside a plastic bottle such as a plastic Coke bottle.

5

evidence. Bell also contends that the evidence is insufficient to sustain his conviction for Class A felony attempted dealing in methamphetamine. For its part, the State argues that the trial court acted within its discretion in admitting the challenged evidence at trial and that the evidence is sufficient to sustain Bell's conviction.

## I. Admission of Evidence

Bell contends that the trial court abused its discretion in admitting certain evidence at trial in violation of Indiana Evidence Rule 404(b) ("Evidence Rule 404(b)"). Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's favor. *Id.*

A trial court has broad discretion in ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003) (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id.* (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)).

6

Bell claims that the trial court abused its discretion in admitting Bell's statement[2] that each time he manufactures methamphetamine, he follows the same recipe and procedure and each batch consistently produces four grams of the drug. Bell acknowledged at trial that his statement was relevant to prove his motive, intent, and plan to manufacture methamphetamine. However, Bell argued both below and on appeal, that this same statement was not relevant to prove the amount of the drug he intended to manufacture, and, as a result, was admitted in violation of Evidence Rule 404(b). We disagree.

> When addressing the admissibility of evidence under [Evidence] Rule 404(b), courts must utilize a two-prong analysis. *Scalissi v. State*, 759 N.E.2d 618, 623 (Ind. 2001). First, the court must assess whether the evidence has some relevancy to a matter at issue other than the defendant's propensity to commit the charged act. *Id.* Second, the court must weigh the probative value of the evidence against its prejudicial effect, pursuant to Evidence Rule 403. *Id.* We will reverse a trial court's determination of admissibility only for an abuse of discretion. *Id.*

*Wages v. State*, 863 N.E.2d 408, 410 (Ind. Ct. App. 2007).

"Evidence Rule 404(b) was designed to assure that 'the State, relying upon evidence of uncharged misconduct, may not punish a person for his character.'" *Lee v. State*, 689 N.E.2d 435, 439 (Ind. 1997) (quoting *Wickizer v. State*, 626 N.E.2d 795, 797 (Ind. 1993)). Evidence Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation,

---

[2] Bell acknowledges that he made this statement after being informed of and waiving his right to have counsel present during questioning as established in *Miranda v. Arizona*, 384 U.S. 436 (1966).

plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evid. R. 404(b)(2). In addition, "'[e]vidence of happenings near in time and place that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted.'" *Wages*, 863 N.E.2d at 411 (quoting *Bocko v. State*, 769 N.E.2d 658, 664-65 (Ind. Ct. App. 2002), *trans. denied*).

Upon review, we determine that the challenged evidence was not admitted to show that Bell acted in accordance with his character but rather to prove Bell's intent, preparation, and plan for manufacturing the methamphetamine. Because Bell was charged with Class A felony attempted dealing in methamphetamine, the State merely needed to prove that Bell engaged in conduct which constituted a substantial step toward manufacturing three grams or more of methamphetamine. *See* Ind. Code § 35-41-5-1 (providing that a person attempts to commit a crime "when acting with the culpability required for the commission of the crime, [the person] engages in conduct that constitutes a substantial step toward the commission of the crime"). Bell's statement was clearly relevant to prove that Bell (1) intended to manufacture more than three grams of methamphetamine, (2) was prepared to manufacture more than three grams of methamphetamine, and (3) had a plan for manufacturing more than three grams of methamphetamine.

Bell has failed to establish that the prejudicial effect of his statement outweighed the probative value of the evidence that he intended, was prepared, and had a plan to manufacture more than three grams of the drug. In addition, Bell's statement was admissible under Evidence Rule 404(b) because it was evidence of events happening near in time and

8

place to the instant offense and helped to complete the story of Bell's crime. *See Wages*, 863

N.E.2d at 411. Accordingly, we conclude that the trial court did not abuse its discretion in

admitting Bell's statement at trial.

## II. Sufficiency of the Evidence

Bell also contends that the evidence is insufficient to sustain his conviction for Class

A felony dealing in methamphetamine.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations

omitted). "In essence, we assess only whether the verdict could be reached based on

reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968

N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not

reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d

433, 435 (Ind. 2002).

Indiana Code section 35-48-4-1.1(a) provides that a person who knowingly or

intentionally manufactures methamphetamine commits dealing in methamphetamine, a Class

B felony. However, the offense is a Class A felony if "the amount of the drug involved weighs three (3) grams or more." Ind. Code § 35-48-4-1.1(b). Again, "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1(a). "An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted." *Id*.

In the instant matter, the evidence is sufficient to prove that Bell attempted to manufacture more than three grams of methamphetamine. Bell admitted to investigating officers that he manufactured methamphetamine every other day, that he followed the same recipe and procedure each time he manufactured the drug, and that each batch consistently produced four grams of the drug. In addition, at the time of Bell's arrest, Elkhart police located several items used to manufacture methamphetamine in Bell's vehicle. These items include a Coleman fuel can, plastic baggies, crystal drain cleaner, sodium hydroxide, stripped lithium batteries and casings, a coffee filter containing white residue, cold packs, and four empty blister packs of pseudoephedrine.

After obtaining a search warrant, officers also searched Bell's apartment, finding numerous items used in or related to the manufacture of methamphetamine. Again, these items included wire strippers, a coffee grinder that contained white residue, scales, a Coleman fuel can, a plastic Coke bottle, plastic baggies, two full boxes of pseudoephedrine, two receipts, crystal drain cleaner, glass tubes that had burn marks, coffee filters containing a white residue that field tested positive for methamphetamine, and aluminum foil boats. The

10

evidence found in Bell's vehicle and Bell's apartment, coupled with his admission, is sufficient to prove that Bell attempted to manufacture three grams of methamphetamine.

Furthermore, we are unpersuaded by Bell's claim that the State was required to prove the actual weight of the methamphetamine in question. Because Bell was convicted of attempted dealing in methamphetamine, the State was merely required to prove that Bell took a substantial step toward manufacturing over three grams of methamphetamine, not that he actually did so.[3] The above-stated evidence clearly proves that Bell did, in fact, take a substantial step toward manufacturing over three grams of methamphetamine. Bell's claims to the contrary effectively amount to an invitation for this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

The judgment of the trial court is affirmed.

RILEY, J., and ROBB, J., concur.

---

[3] We note that Bell's argument would arguably lack merit even if he had been convicted of dealing in methamphetamine rather than attempted dealing in methamphetamine. The Indiana Supreme Court has previously concluded that in order to prove the element of weight of drugs or controlled substances, the State must either offer evidence of its actual, measured weight or demonstrate that the quantity of the drugs or controlled substances is so large as to permit a reasonable inference that the element of weight has been established. *See Halsema v. State*, 823 N.E.2d 668, 674 (Ind. 2005). The State likely met this burden by proving that Bell intended to and consistently did produce four grams of methamphetamine each time he manufactured the drug.