Lacie NYBO, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–0303–CR–81.

Court of Appeals of Indiana.

Dec. 9, 2003.

Anthony V. Luber, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Lacie A. Nybo ("Lacie") appeals her maximum sentence for neglect of a dependent as a class C felony.

We reverse and remand.

### ISSUE

Whether Lacie was improperly sentenced.

### FACTS

In February 2001, Lacie was living with her husband, Michael Nybo ("Michael"), and their thirteen-month-old adopted daughter, Mikayla, in South Bend. On numerous occasions Lacie observed Michael hit Mikayla. Specifically, on February 23, 2001, Lacie observed Michael strike Mikayla with a belt causing bruises to appear on her buttocks. At no time did Lacie attempt to stop Michael's abuse of Mikayla. Then, on March 10, 2001, Mikayla was crying in her playpen when Lacie observed Michael pick Mikayla up and throw her onto the floor. Mikayla struck her head on the floor and started gurgling. Paramedics were called to Lacie's home because Mikayla was not breathing. Mikayla was taken to Memorial Hospital where she was pronounced dead after resuscitation procedures failed.

On March 21, 2001, Lacie was charged with battery, as a class D felony, and neglect of a dependent, as a class C felony; Michael was charged with murder. On March 29, 2001, Lacie filed a motion to dismiss the charge of neglect of a dependent alleging that the charge was ambiguous. On April 30, 2001, the trial court

granted Lacie's motion and allowed the State to amend the charge.

On June 25, 2001, the State amended Count I from battery to murder. Subsequently, the State filed a motion requesting the trial court to grant use immunity[1] to Lacie so that she could be compelled to testify against Michael. After a hearing, the trial court granted the State's motion.

At Michael's trial, Lacie testified that Michael would beat Mikayla when he was in a grouchy mood, and that she didn't intervene but would yell at Michael when a beating occurred.[2] However, she also testified that some of Mikayla's bruises were from Mikayla being knocked into a coffee table by a dog or from other falls. Her testimony was often inconsistent with both her deposition and statement given to police. In addition, when shown fifteen photographs of bruises on various parts of Mikayla's body, Lacie testified that she didn't know where the bruises had come from. On direct examination, she also stated that "nobody" killed her daughter. (App. 387).

Dr. Richard Seall ("Dr. Seall"), the attending emergency room physician that treated Mikayla on March 10, 2001, testified that he noticed "multiple bruises almost everywhere on" Mikayla. (App. 211). Dr. Seall also testified that the "injuries to [Mikayla] were so widespread, that it was not consistent with an isolated event." (App. 220). Dr. Joseph Prahlow ("Dr. Prahlow"), the forensic pathologist that performed the autopsy, testified that he found skull fractures and opined that Mikayla died from blunt force injury to her head and brain that occurred two to three hours before her death. Dr. Thomas Keucher, a neurosurgeon who reviewed Mikayla's medical records, concluded

> that on the afternoon of her death she was shaken, she was then slammed down onto something hard enough to break the back of her head, that she immediately stopped breathing, she may have had a seizure, whether she did or not, is irrelevant.
>
> She developed the brain swelling, stayed in a coma and died acutely within minutes of the time of the injury.

(App. 310).

Subsequently, on November 18, 2002, the State amended the neglect of a dependent charge, to allege that Lacie, having care, custody, and control over Mikayla, knowingly placed Mikayla in a situation endangering her health "by failing to protect her from continued battery by Michael Nybo, and resulted in bodily injury to the dependent, . . . ." (App. 67). On that same date, Lacie entered into a plea agreement with the State. In the plea agreement, Lacie agreed to plead guilty to neglect of a dependent, as a class C felony, and the State agreed to dismiss the murder charge. In addition, both parties agreed to a recommendation that Lacie receive the presumptive sentence of four years, that the sentence be suspended, and that

1. "Three types of immunity may be granted a witness in exchange for his testimony: (1) transactional immunity: which prohibits the State from criminally prosecuting the witness for any transaction concerning that to which the witness testifies; (2) use immunity: where the testimony compelled of the witness may not be used at a subsequent criminal proceeding; and (3) derivative use immunity: whereby any evidence obtained as a result of the witness' compelled testimony may not be admitted against him in a subsequent criminal prosecution." *In re Caito,* 459 N.E.2d 1179, 1182–1183 (Ind.1984).

2. The record does not indicate on which dates Michael's trial was held. However, the same trial court presided over Michael's trial and the trial court referred to Michael's trial at Lacie's December 19, 2002 sentencing hearing.

Lacie be placed on probation for a period of two years. The trial court took the plea agreement under advisement at a hearing held on November 18, 2002. On November 22, 2002, the trial court rejected the plea agreement. The relevant portion of the trial court's rejection order reads as follows:

> ... I have had the opportunity to preside over the case involving the defendant's husband, Michael Nybo, and, as such, am aware of facts that I would not normally have before me in any plea proceeding. Those facts concern the testimony by medical personnel at Michael Nybo's trial, the history of the injuries inflicted, the testimony of this defendant at the trial, and the factual basis provided by this defendant on November 18, 2002. I also note that the plea entered in this matter, that being to Neglect of a Dependent, as a class C felony, ignores the serious bodily injury, namely death, which was inflicted upon Mikayla Nybo. This "serious bodily injury" *could* support elevating the charge to a class B felony. I am also aware that under current Indiana law, specifically the case law provided to the parties in my letter dated July 31, 2002, that the charge of Murder *may* not be sustainable. That, however, is an issue which can only be determined at trial and after the State has had the full opportunity to present all of its evidence.
>
> The Plea Agreement in this matter calls for the defendant to be convicted of Neglect of a Dependent, as a Class C felony (imposing criminal liability only for causing bodily injury and not serious bodily injury) and, further, seeks to bind the Court not only as to the length of sentence but also as to its nature. By calling for the imposition of the "presumptive" four year sentence this Plea Agreement, if accepted, would preclude me from weighing aggravating and mitigating factors; it would bind me to impose a suspended sentence; and, further, bind me to impose only a two year term of probation. The proposed sentence ignores not only the facts, but also the punitive and rehabilitative aspects of the law. Accordingly, I can not accept the Plea Agreement....

(App. 72) (emphasis in original).

At a hearing on December 2, 2002, Lacie and the State entered into another plea agreement containing essentially the same terms. The trial court took Lacie's plea under advisement and scheduled a sentencing hearing for December 19, 2002. At the sentencing hearing, the court noted as mitigating circumstances that Lacie (1) had no criminal history; (2) would "respond affirmatively to probation or short-term imprisonment"; (3) would be "unlikely to commit another crime"; (4) was genuinely remorseful; and (5) had pled guilty. (App. 145-6). As aggravating circumstances, the court noted (1) that Lacie was in need of "rehabilitative treatment that can be best provided by commitment to a penal facility"; (2) that imposing a "reduced or suspended sentence[ ]" would depreciate the seriousness of the offense"; and (3) that Mikayla was an infant who was "mentally or physically infirm."

In addition, the sentencing court stated

> I also have to consider the testimony, and I have considered, and am making this a part of the record, Mrs. Nybo's testimony at Michael Nybo's trial.
>
> And I do that because it was a situation at that point and time where Mr. Nybo was in custody, no longer was a threat to Mrs. Nybo. And nonetheless in questioning by Mr. Maciejczyk while under oath, and the specific pages I will include for this record, pages 677 to 680, over and over again denied knowing

anything about all of these injuries that she had sustained, had no idea at all.

And then on page 618 of that transcript Mr. Maciejczyk said, "Who killed your daughter?"

And your answer was, "Nobody."

I think that that factor speaks contrary, or at least a little contrary to the mitigating circumstances that this was a result of an abusive relationship that Ms. Nybo couldn't get herself out of, and acted or failed to act in the way she did because she was afraid of Michael Nybo.

Because here was a chance to set the facts straight, where Mr. Nybo could not have harmed her at all in any way. And yet we have a little different version from his trial at the end of 2001, to the factor basis and statements that are made now towards the end of 2002 . . . .

[Lacie's counsel objects to the court's use of Lacie's testimony.]

I understand that, but I think it is still something that I can consider, and will consider it over objection as well.

And I guess finally, and probable most importantly, I have to consider the facts and circumstances of this offense. And whether I'm on think [sic] ice or not, I don't know.

But as I said the plea actually involves the conduct on the 24th of February, and the death did not happen until March 10th. But I don't think I can simply treat that date as just one spot on a time line and ignore what came before and what came afterward.

And the facts in this case I think are particularly egregious and heinous.

I would refer, which I will incorporate in the file in this matter the medical testimony that was adduced at Michael Nybo's trial, specifically that of the emergency room nurse, Kathy Long, the emergency room physician, Rick Seall,

and Joseph Prahlow[,] the pathologist[,] and Thomas Keucher, the expert witness who testified on behalf of the state . . . .

(App. 150–3).

After considering the evidence, the sentencing court found that the aggravating circumstances outweighed the mitigators and sentenced Lacie to the maximum term of eight years.

## DECISION

Lacie appeals her maximum sentence. First, Lacie argues that the sentencing court improperly considered her testimony in Michael's trial given under a grant of use immunity. Secondly, she argues that the sentencing court considered the testimony of witnesses in Michael's trial, which she did not have the opportunity to cross-examine. Finally, Lacie argues that the trial court's reasoning demonstrates that it improperly relied on evidence in Michael's trial, namely the death of Mikayla and her status as a dependent, to justify imposing the maximum sentence.

Sentencing decisions are within the trial court's discretion and will not be reversed unless an abuse of discretion can be shown. *Flammer v. State*, 786 N.E.2d 293 (Ind.Ct.App.2003), *trans. denied*. This decision includes the determination of whether to increase presumptive penalties, which can be supported by a single aggravating circumstance. *Id; Bocko v. State*, 769 N.E.2d 658 (Ind.Ct.App.2002), *trans. denied*. When the trial court chooses to do so, the trial court must weigh aggravating and mitigating circumstances. *Id.* "The sentencing statement must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating and mitigating; and (3) demonstrate that the aggravating and mitigating circumstances have been weighed to determine

that the aggravators outweigh the mitigators." *Id.* at 296. The trial court's sentencing order and statements at the sentencing hearing are examined to determine whether the court adequately explained the reasons for the sentence. *Id.* We will affirm the sentence imposed by the trial court if we find that the sentence is appropriate in light of the nature of the offense and character of the offender. Ind. Appellate Rule 7(B).

In addressing Lacie's argument that the sentencing court improperly considered her immunized testimony in imposing her sentence, we find that she is correct. "Indiana Code § 35–37–3–3 provides for the grant of use and derivative use immunity for a witness in a trial. Once immunized, 'any evidence that the witness gives, or evidence derived from that evidence, may not be used in *any criminal proceeding* against that witness.'" *Brown v. State*, 725 N.E.2d 823, 826 (Ind.2000) (emphasis added). The statute clearly states that *any* evidence given or derived from that evidence cannot be used against that witness in any criminal proceeding, which would include a sentencing hearing. *See Campbell v. State*, 716 N.E.2d 577 (Ind.Ct.App.1999) (If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation.). As a result, the sentencing court should not have considered any part of Lacie's testimony in deciding what sentence to impose.

However, the trial court also based its sentencing decision on other factors not gleaned from Lacie's immunized testimony. For example, the trial court relied upon the medical testimony of Drs. Seall, Prahlow, and Keucher to weigh the nature of the offense as it related to the character of Lacie. Lacie contends that the sentencing court could not consider the testimony of these witnesses because she did not have the opportunity to cross-ex-

amine them. However, it is well settled that a defendant that enters a valid guilty plea waives the constitutional right to cross-examine witnesses. *Moore v. State*, 479 N.E.2d 1264, 1279 (Ind.1985). As such, it was not an abuse of discretion for the trial court to consider the testimony of medical experts from Michael's trial regarding injuries to Mikayla.

Lacie next argues that the trial court improperly considered as aggravators Mikayla's age, a material element of the offense, and her murder, with which Lacie was not charged. Here, the trial court did consider as an aggravating factor that Mikayla was an infant. It is generally true that a material element of a charged offense may not be used as an aggravating factor at sentencing. *Bocko*, 769 N.E.2d 658. Indiana Code § 35–46–1–4 provides that a person who knowingly or intentionally places a *dependent* in a situation that endangers the dependent's health or life and results in bodily injury commits a class C felony. A *dependent* is an unemancipated person under the age of 18 or a person who is mentally or physically disabled, and we find that the sentencing court's use of Mikayla's status as a dependent as an aggravating factor was also improper. Ind.Code § 35–46–1–1.

However, we are concerned with the overall tenor of the trial court's statements concerning Lacie's sentence. For example, it was clear that the trial court thought that the State had been too lenient in charging Lacie with a class C felony. In its order rejecting Lacie's initial plea agreement, the trial court stated that that plea agreement "ignores the serious bodily injury, namely death, which was inflicted upon Mikayla Nybo." (App. 72). While the trial court had inferred in a letter to the State and defendant that "under current Indiana law" the murder charge "may not be sustainable," it was clear that the trial

court lamented and focused upon the heinous nature of Mikayla's death, for which Michael had been tried and convicted, and it became the central reason for enhancing Lacie's sentence. (App. 72). Even knowing that it was on thin ice, the trial court relied upon but disregarded the impact of using Lacie's trial testimony, which was given under a grant of use immunity, to justify imposing the maximum sentence against her. Based solely on Lacie's immunized testimony, the trial court concluded that Lacie sought to (1) avoid taking responsibility for Mikayla's death; and (2) concluded, without any definitive evidence in support thereof, that Lacie was not the victim of an abusive relationship because her evasive testimony at Michael's trial was evidence of her attempt to protect Michael.

 Although a single aggravating circumstance can serve as the basis for enhancing a sentence, we find, in the instant case, that the trial court relied heavily upon Lacie's testimony which had been given under a grant of use immunity and its own personal belief, after sitting through Michael's trial, in reaching the conclusion that the State had been too lenient in charging Lacie to justify its imposition of the maximum sentence against Lacie. The decision whether or not to prosecute, and what charge to file, rests entirely within the discretion of the prosecuting attorney. *Danks v. State*, 733 N.E.2d 474, 483 (Ind.Ct.App.2000), *trans. denied*. While a trial court has no control over what charges are brought, it does have wide discretion in deciding whether to accept or reject a guilty plea. *Jennings v. State*, 723 N.E.2d 970, 972 (Ind.Ct.App. 2000). If the trial court was displeased with Lacie's plea agreement, it had the discretion to reject it. On the other hand, it cannot accept the plea agreement, then punish Lacie at sentencing for the State's

perceived leniency in striking the deal in the first place. Moreover, our supreme court has held that a trial judge's desire to send a personal philosophical or political message is not a proper reason to aggravate a sentence. *Gregory–Bey v. State*, 669 N.E.2d 154, 159 (Ind.1996), *overruled on other grounds as recognized by Grinstead v. State*, 684 N.E.2d 482 (Ind.1997); *Scheckel v. State*, 655 N.E.2d 506, 510 (Ind. 1995) (same; tone and lack of specificity of sentencing statement show improper considerations used); *Hamman v. State*, 504 N.E.2d 276, 278–79 (Ind.1987) (trial court cannot consider personal disagreement with jury's verdict in ordering sentence); *Hammons v. State*, 493 N.E.2d 1250, 1252–53 (Ind.1986) (same).

Pursuant to Indiana Appellate Rule 7(B), we exercise our independent authority to review and revise sentences and find that Lacie's eight-year sentence is inappropriate. We, therefore, vacate Lacie's sentence and remand to the trial court with instruction to enter the presumptive sentence of four (4) years.

Reversed and remanded.

MAY, J., concurs.

BARNES, J., dissents with separate opinion.

BARNES, Judge, dissenting.

I respectfully dissent. Although it is true that the trial court may have looked to the immunized testimony here, I am convinced that the aggravating circumstances cited and the specific facts here, especially the death of a child, more than amply gave the court room under our statutory scheme to impose an enhanced sentence. I would affirm.