**Kyle NEFF, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 12A02–0411–CR–920.**

Court of Appeals of Indiana.

Aug. 15, 2005.

Stephanie C. Doran, Kokomo, for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MATHIAS, Judge.

Kyle Neff ("Neff") pled guilty in Clinton Circuit Court to Class C felony aiding,

inducing or causing battery and was sentenced to serve eight years. Neff appeals his sentence raising four issues; however, we find the following two issues to be dispositive:

I.    Whether the trial court improperly considered Neff's immunized testimony when it sentenced Neff; and,

II.   Whether the trial court improperly relied on aggravating circumstances in violation of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Concluding that the trial court improperly relied on Neff's immunized testimony and certain aggravating circumstances, we reverse and remand with instructions to reduce Neff's sentence to six years, four years to be executed in the Department of Correction and two years to be served as a direct commitment to the Hamilton County Community Corrections Work Release Program.

### Facts and Procedural History

On or about October 2, 2002, Elizabeth Balser ("Balser") told Neff that Tabitha Raines ("Raines") stole drugs from her and that she wanted to beat Raines up. Neff, who was friends with Raines, agreed to ask Raines to meet him at the Tipton City Park later that evening. After Balser stated that she wanted to have a gun when she confronted Raines, Neff obtained a gun from his mother's residence and gave it to Balser.

Balser, Neff, and another man, Jon Yates ("Yates"), eventually met with Raines in the park as planned. Balser accused Raines of stealing her drugs and struck Raines on the head causing Raines to fall to the ground. As Raines was getting up, Balser shot Raines in the head with the gun provided by Neff.

On March 24, 2003, Neff was charged with aiding, inducing or causing murder, Class B felony criminal confinement, and Class C felony assisting a criminal.[1] On April 14, 2004, Neff and the State entered into a plea agreement providing that Neff would plead guilty to Class C felony aiding, inducing or causing battery in exchange for dismissal of the remaining counts. Sentencing was left to the discretion of the trial court.

Under the plea agreement, Neff was required to testify truthfully in the trials of Balser and Yates. Additionally, the parties entered into an immunity agreement, which provides in relevant part:

It is further agreed that the Defendant shall be given use and derivative use immunity for all and any testimony given by Defendant, or derived therefrom, and that the State of Indiana shall be barred from use of any sworn statement, deposition or trial testimony, or any information derived therefrom, procured pursuant to this agreement and the Immunity Agreement, entered into by the parties on August 14, 2003, in the instant, or any future prosecution against the Defendant, except said grant of use and derivative use immunity does not prohibit the use of the testimony by Kyle M. Neff in the event of a prosecution, against Defendant, for perjury under I.C. 35–44–2–1.

Appellant's App. pp. 160–61.

Neff was sentenced on October 8, 2004. At the sentencing hearing, the trial court made the following remarks concerning Neff's testimony in the Balser case:

I am impressed with the fact though that your testimony in the Elizabeth Balser case where today you have talked

---

**1.**  Special Judge Steven Nation qualified and assumed jurisdiction of this case on March 25, 2003. On December 10, 2003, Neff's mo-

tion for change of venue was granted, and the case was transferred from Tipton Circuit Court to Clinton Circuit Court.

about Tabitha as your friend but I am still startled by your testimony that you took cigarette breaks between the killing of her and delivering her body into the river. I cannot imagine any definition of friendship that would include not being appalled by the killing of your friend and not taking responsibility at that point. I also note that you got her to the park, that you got the gun, that you knew it was loaded, that after the crime you hid the gun and brought it back to your mom's. And I also take note that although you finally did enter into a plea that there is no showing in the record that you ever went forward and were remorseful before your incarceration. And I think the other thing that still sticks in my mind is that the only hope that you had in your mind that night for getting your friend to go to the park where you knew at least that she was going to be hurt was that you would get more drugs.

Tr. p. 54.[2]

The trial court found the following aggravating circumstances: Neff's criminal history, his failure to rehabilitate despite past incarceration, counseling, and probation, he violated his probation when he committed the instant offense, and the risk that he will reoffend. The trial court also found three mitigating circumstances: Neff's incarceration will cause undue hardship on his family, he testified in Balser's trial, and he pled guilty. The trial court found that the aggravating circumstances outweighed the mitigating circumstances and sentenced Neff to serve eight years, six years executed in the Department of Correction and two years to be served as a direct commitment to the Hamilton County Community Corrections Work Release Program. Appellant's App. p. 273. Neff now appeals.

## I. Neff's Immunized Testimony

■ Relying on *Nybo v. State*, 799 N.E.2d 1146 (Ind.Ct.App.2003), Neff argues that the trial court improperly relied on his immunized testimony when the court imposed his sentence.[3] In *Nybo*, the defendant's thirteen-month-old daughter died as a result of injuries inflicted upon her by the defendant's husband. *Id.* at 1147. Use immunity was granted to the defendant so that she could be compelled to testify against her husband. *Id.* at 1148. The defendant then pled guilty to Class C felony neglect of a defendant. *Id.* at 1149.

During the sentencing hearing, the trial court incorporated the defendant's testimony at her husband's trial into the record. Relying solely on the defendant's immunized testimony, the trial court concluded that the defendant sought to avoid taking responsibility for her daughter's death and that the defendant "was not the victim of an abusive relationship because her evasive testimony at [her husband's] trial was evidence of her attempt to protect [him]." *Id.* at 1149–50.

On appeal, the defendant argued that the trial court improperly considered her immunized testimony in imposing her sentence. *Id.* at 1151. Our court agreed and stated:

"Indiana Code [section] 35–37–3–3 provides for the grant of use and derivative use immunity for a witness in a trial. Once immunized, 'any evidence that the witness gives, or evidence derived from

---

2. All citations to the transcript refer to the transcript of the sentencing hearing.

3. The State argues that Neff waived this argument by failing to object to the trial court's statements during the sentencing proceed-ings. However, in his sentencing memorandum submitted to the court, Neff cited *Nybo* for its holding that a trial court may not rely on immunized testimony during sentencing proceedings. *See* Appellant's App. p. 267.

that evidence, may not be used in *any criminal proceeding* against that witness.'" *Brown v. State,* 725 N.E.2d 823, 826 (Ind.2000) (emphasis added). The statute clearly states that any evidence given or derived from that evidence cannot be used against that witness in any criminal proceeding, which would include a sentencing hearing. *See Campbell v. State,* 716 N.E.2d 577 (Ind.Ct. App.1999) (If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation.). As a result, the sentencing court should not have considered any part of [the defendant's] testimony in deciding what sentence to impose.

*Id.*

At Neff's sentencing hearing, prior to discussing his immunized testimony, the trial court noted that Neff had failed to obtain rehabilitative treatment, "blamed others for [his] problems," and did not take responsibility for his recovery. Tr. p. 54. Next, the trial court recounted Neff's immunized testimony stating in part, "I think the other thing that still sticks in my mind is that the only hope that you had in your mind that night for getting your friend to go to the park where you knew at least that she was going to be hurt was that you would get more drugs." *Id.* The court then stated, "[w]ell based on that it is too bad that you did not take care of the advantages and treatment." *Id.* at 54–55. Therefore, we conclude that the trial court improperly relied on Neff's immunized testimony when it found as an aggravating circumstance that Neff failed to rehabilitate.

## II. Application of Blakely to Neff's Sentence

Next, Neff contends that his maximum eight-year sentence is improper because the trial court relied upon aggravating circumstances that were not supported by jury findings.[4] In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the United States Supreme Court held, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 124 S.Ct. at 2536, 124 S.Ct. 2531 (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). "The 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 2537.

The trial court found the following aggravating circumstances: Neff's criminal history, his failure to rehabilitate despite past incarceration, counseling, and probation, he violated his probation when he committed the instant offense, and the risk that he will reoffend. Neff concedes that the trial court properly considered his criminal history consisting of two Class D felony theft convictions and a Class A misdemeanor possession of marijuana conviction. However, he asserts that the remaining aggravating circumstances are improper under *Blakely.*

Recently, our supreme court considered a *Blakely* challenge to the "failure to rehabilitate" aggravator. In *Morgan v. State,* the court held that observations a court makes about facts admitted by the defendant or found by a jury "may reflect on the weight of acknowledged facts or prior convictions but are not themselves separate aggravators." 829 N.E.2d 12, 14, 17 (Ind.2005) ("We conclude that such state-

---

4.  The presumptive sentence for a Class C felony is four years to which four years may be added for aggravating circumstances and two years may be subtracted for mitigating circumstances. Ind.Code § 35–50–2–6(a) (2004).

ments, which our Court of Appeals has called 'derivative' of criminal history, are legitimate observations about the weight to be given to facts appropriately noted by a judge alone under *Blakely.* They cannot serve as separate aggravating circumstances.").[5]

Under *Morgan,* we conclude that the aggravating circumstances that Neff failed to rehabilitate and the risk that he will reoffend, should not have been considered as separate aggravating circumstances. However, such statements are legitimate observations about the weight to be given to Neff's criminal history.[6]

We now turn to whether the trial court properly considered the fact that Neff violated his probation when he committed the instant offense as an aggravating circumstance. In *Bledsoe v. State,* 815 N.E.2d 507, 508 (Ind.Ct.App.2004), *trans. denied,* our court concluded that use of that aggravator is proper under *Blakely.* However, another panel of our court has observed that use of the "probation at the time of the offense aggravating circumstance" is "problematic" under *Blakely. See Teeters v. State,* 817 N.E.2d 275, 279 (Ind.Ct.App. 2004), *trans. denied.* Finally, in *Patrick v. State,* 819 N.E.2d 840, 848 (Ind.Ct.App. 2004), *trans. granted,* 827 N.E.2d 30 (Ind. 2005), our court relied on *Bledsoe* in hold-

ing that the fact that the defendant "was on probation at the time of the instant offense does not implicate *Blakely.*"[7]

However, in *Patrick,* Judge Vaidik disagreed with the majority's conclusion concerning the use of the defendant's probationary status as an aggravating circumstance and stated:

> One cannot be on probation without having been convicted of a crime; thus, being on probation infers that one has a criminal record. In this sense, the act of being on probation is derivative of criminal history. The opposite—someone with a criminal record must currently be on probation or have been on probation at some point in his life—is not necessarily true. Similarly, whether someone is on probation on a given day, which is fundamental to the aggravator in question above, is a question of fact that is not derivative of criminal history. In some cases, whether a defendant is on probation on a certain day is not entirely clear. *See, e.g., Kopkey v. State,* 743 N.E.2d 331, 339 (Ind.Ct.App. 2001) ("A defendant's 'probationary period' begins immediately after sentencing, even if his or her actual probation begins at a later date."). In sum, the fact that someone has a criminal history does not mean that that individual was on

---

**5.** Morgan's criminal history and admitted probation violation were properly considered as aggravating circumstances under *Blakely.* After holding that the failure to rehabilitate aggravator "was a conclusion about the weight of the first two," the court concluded that the aggravating circumstances were in equipoise with the five mitigating circumstances, and reduced Morgan's enhanced sentence to the presumptive term. *Id.* at 18.

**6.** In *Waldon v. State,* 829 N.E.2d 168, 183 (Ind.Ct.App.2005), our court held that relying on the "risk that the defendant will reoffend" aggravator is improper under *Blakely,* unless such fact is found by a jury or admitted by the defendant. *Waldon* was issued one day be-

fore our supreme court's decision in *Morgan.* Under *Morgan*'s holding, we conclude that if "the risk the defendant will reoffend" aggravator is derivative of criminal history or facts admitted by the defendant, then the risk that the defendant will reoffend can be considered in determining the weight to give to the defendant's criminal history.

**7.** On transfer, our supreme court "reserve[d] for another day an explicit determination" of whether a defendant's probationary status at the time he commits a crime implicates *Blakely. Patrick,* 827 N.E.2d at 31 n. 2 (Ind.2005). On June 21, 2005, the court heard oral argument on this issue in *Ryle v. State. See* http://www.indianacourts.org/apps/webcasts.

probation on a certain day. Therefore, I think that the aggravator at issue here—that Patrick was on probation at the time of the offense—is a "fact" that must be admitted by Patrick or that a jury must find beyond a reasonable doubt.

*Id.* at 850–51 (Vaidik, J., concurring in result).

■ We agree with Judge Vaidik that whether a defendant is on probation on the date he commits another offense is a question of fact that is not necessarily derivative of criminal history. Unless the defendant admits that he was on probation at the time he committed the offense in question, evidence must be presented establishing that fact. Therefore, we hold that under *Blakely,* a trial court may not rely on the defendant's probationary status to enhance his or her sentence unless it is a fact found by a jury or admitted by the defendant.

After these considerations, the only remaining aggravating circumstance properly found by the trial court is Neff's criminal history. In *Morgan,* our supreme court observed that "[w]hile there are many instances in which a single aggravator is enough, this does not mean that sentencing judges or appellate judges need do no thinking about what weight to give a history of prior convictions." 829 N.E.2d at 15. "This weight is measured by the number of prior convictions and their seriousness, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on a defendant's culpability." *Id.; see also Neale v. State,* 826 N.E.2d 635, 639 (Ind.2005) (The significance of a defendant's criminal history "varies based on the gravity, nature and number of prior offenses as they relate to the current offense.").

Neff has three prior convictions: two Class D felony theft convictions and a Class A misdemeanor possession of marijuana conviction. The two theft convictions resulted from charges filed on December 7, 1998, and April 23, 1999. Neff was charged with possession of marijuana on November 23, 2000. The offense in this case was committed on or about October 2, 2002.

Neff's criminal history is significant as it demonstrates that Neff was unable to lead a law-abiding life during the four years prior to the commission of this instant offense. Further, Neff's conviction for possession of marijuana is worthy of some weight given Neff's own admission that his drug use played a role in this crime. Tr. p. 26. Weight should also be given to Neff's felony convictions for theft, but we must also observe that those convictions are dissimilar to his present offense of Class C felony aiding, inducing, or causing battery.

Finally, the trial court found three mitigating circumstances: Neff's incarceration will cause undue hardship on his family, his testimony in Balser's trial, and his guilty plea. When weighed against the sole remaining aggravating circumstance of Neff's criminal history, we conclude that the weight of the three mitigating circumstances is less than the weight of Neff's criminal history, but not so much less that the maximum sentence is appropriate. Accordingly, we direct the trial court to revise Neff's sentence to the presumptive term of four years plus two years to reflect the net aggravators, with four years executed in the Department of Correction and two years to be served as a direct commitment to the Hamilton County Community Corrections Work Release Program. Moreover, we observe that a six-year sentence is certainly appropriate in light of the nature of the offense and the character of the offender.

Reversed and remanded for proceedings consistent with this opinion.

DARDEN, J., and CRONE, J., concur.