**Thomas TRACY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 15A04–0409–CR–498.

Court of Appeals of Indiana.

Nov. 16, 2005.

Rehearing Granted Jan. 10, 2006.

Leanna Weissmann, Lawrenceburg, for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Thomas Tracy appeals his five convictions, including attempted murder, stemming from his actions that culminated in the shooting of an on-duty police officer. Because battery as a Class C felony is neither inherently nor factually included in attempted murder as charged in this case, the trial court did not err by refusing to instruct the jury on battery. In addition, Tracy has forfeited his *Blakely* challenge by not objecting in the trial court. In any event, the trial court did not err in enhancing Tracy's sentences because of his prior convictions. Finally, Tracy's 107–year sentence is not inappropriate given his extensive criminal history and his leading of police officers on a high-speed chase on city streets during a high-traffic time and firing of multiple shots, one of which struck an officer in the thigh. We therefore affirm the trial court.

## Facts and Procedural History

On November 22, 2003, the Indiana State Police issued a dispatch that Tracy was wanted for offenses in Marion County, that he was armed and dangerous, and that he might be traveling to Dearborn County. The dispatch included a physical description of Tracy as well as the possible vehicles in which he might be traveling.

Officer Joshua Daugherty of the Aurora Police Department heard the dispatch and was sitting in his patrol car watching traffic on U.S. 50 in Dearborn County when he observed Tracy drive by in one of the described vehicles. Without activating his siren or lights, Officer Daugherty pulled in behind Tracy, confirmed the license plate number with dispatch, and requested back up. In the meantime, Tracy pulled over to the side of the road and motioned for Officer Daugherty to pass him. Believing it was an ambush, Officer Daugherty exited his car with his weapon drawn and ordered Tracy to show his hands. Tracy sped off. By that time, two other police officers had arrived on the scene, and they pursued Tracy. Officer Daugherty ran back to his car and joined the pursuit.

During the course of the pursuit, Tracy abruptly turned into a parking lot, but the two other police officers could not turn in time and drove on past. Officer Daugherty, who was farther behind them, was able to make the turn. As Tracy was maneuvering his vehicle out of the parking lot, he made eye contact with Officer Daugherty, stuck his arm out the window, and fired several gunshots at him. One of the shots passed through the driver's side door of Officer Daugherty's patrol car, striking him in the left thigh. Officer Daugherty and the other officers continued pursuing Tracy, reaching speeds of up to 100 miles per hour, until Tracy drove across stop sticks, which deflated his tires. Tracy then fled on foot with his gun. Officer Daugherty and the other officers pursued Tracy on foot until he eventually surrendered.

The State charged Tracy with Count I: Attempted Murder, a Class A felony;[1] Count II: Unlawful Possession of a Firearm by a Serious Violent Felon, a Class B felony;[2] Count III: Resisting Law Enforcement as a Class D felony;[3] Count IV: Resisting Law Enforcement as a Class D felony;[4] and Count V: Auto Theft as a Class D felony.[5] The State also alleged that Tracy was a habitual offender.[6] A jury trial was then held. During the course of the trial, Tracy tendered an instruction on Battery as a Class C felony as a lesser-included offense of attempted murder, which the trial court refused to give. The jury found Tracy guilty as charged, except it found him guilty of Criminal Conversion, a Class A misdemeanor,[7] as a lesser-included offense of auto theft. The jury also found him to be a habitual offender. Finding five aggravators and no mitigators, the trial court sentenced Tracy to the maximum term for each of his felony convictions, ordered all the sentences to be served consecutively, and enhanced his sentence by thirty years for the habitual offender finding, for an aggregate term of 107 years. Tracy now appeals.

## Discussion and Decision

Tracy raises three issues on appeal. First, he contends that the trial court

---

1. Ind.Code §§ 35–42–1–1(1), 35–41–5–1(a).

2. Ind.Code § 35–47–4–5.

3. Ind.Code § 35–44–3–3(a)(3), (b)(1)(B).

4. *Id.*

5. Ind.Code § 35–43–4–2.5(b).

6. Ind.Code § 35–50–2–8.

7. Ind.Code § 35–43–4–3.

erred in refusing to give his tendered instruction on battery as a lesser-included offense of attempted murder. Second, Tracy contends that the trial court enhanced his sentences in violation of *Blakely*. Last, he contends that his 107–year sentence is inappropriate. We address each issue in turn.

## I. Battery as a Lesser–Included Offense of Attempted Murder

■ Tracy contends that the trial court erred by refusing to give his tendered instruction on battery as a Class C felony as a lesser-included offense of attempted murder. In *Wright v. State*, 658 N.E.2d 563 (Ind.1995), the Indiana Supreme Court developed a three-part test that trial courts should perform when called upon by a party to instruct a jury on a lesser-included offense of the crime charged. First, the trial court must compare the statute defining the crime charged with the statute defining the alleged lesser-included offense to determine whether the alleged lesser-included offense is inherently included in the crime charged. *Fisher v. State*, 810 N.E.2d 674, 678 (Ind.2004). Second, if the trial court determines that an alleged lesser-included offense is not inherently included in the crime charged under step one, then the court must determine whether the alleged lesser-included offense is factually included in the crime charged. *Id.* If the alleged lesser-included offense is neither inherently nor factually included in the crime charged, then the trial court should not give an instruction on the alleged lesser-included offense. *Id.* Third, if the trial court determines that an alleged lesser-included offense is either inherently or factually included in the crime charged, then the court must look at the evidence presented in the case by both parties to determine whether there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. *Id.* It is reversible error for a trial court not to give an instruction, when requested, on an inherently or factually included offense if there is such an evidentiary dispute. *Id.*

■ Battery as a Class C felony is not an inherently included offense of attempted murder. *Edwards v. State*, 773 N.E.2d 360, 364 (Ind.Ct.App.2002), *trans. denied*. Determining whether battery is a factually included offense of attempted murder "involves comparing the statute defining the alleged lesser[-]included offense with the charging information in the case." *Noble v. State*, 725 N.E.2d 842, 846 (Ind.2000); *Means v. State*, 807 N.E.2d 776, 783–84 (Ind.Ct.App.2004), *trans. denied; see also Edwards*, 773 N.E.2d at 364–65 (comparing charging information for attempted murder with elements of alleged lesser-included offense of battery as a Class C felony).

■ Battery as a Class C felony is defined by statute as a knowing or intentional touching of another person in a rude, insolent, or angry manner by the use of a deadly weapon. Ind.Code § 35–42–2–1(a)(3). The charging information for attempted murder alleged in pertinent part that "Tracy did engage in conduct that constituted a substantial step toward commission of murder, to-wit: did fire a loaded gun at Joshua Daugherty while Daugherty was engaged in his official duties." Appellant's App. p. 16–17. A comparison of the elements of battery with the charging information for attempted murder reveals that battery requires a touching but the charging information for attempted murder does not allege one. As charged in this case, attempted murder can be

proved without proving that a battery occurred; in other words, the State only had to prove that Tracy shot at Officer Daugherty but did not actually shoot him. Because the act as alleged in the charging information for attempted murder does not establish all of the elements of battery as a Class C felony, battery is not a factually included offense of attempted murder in this case. *Cf. Edwards,* 773 N.E.2d at 365 (concluding that battery as a Class C felony was factually included in the offense of attempted murder because the charging information for attempted murder alleged that the defendant stabbed "at · and against" the victim). Because battery as a Class C felony is neither inherently nor factually included in attempted murder as charged in this case, the trial court did not err by refusing to give Tracy's instruction on battery.

## II. *Blakely*

Tracy next contends that the trial court enhanced the sentences for his felony convictions in violation of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied,* by relying on aggravators not found by a jury beyond a reasonable doubt. Specifically, the trial court found the following aggravators: (1) Tracy's substantial criminal history; (2) the nature and circumstances of the crime; (3) Tracy's complete lack of remorse; (4) Tracy is likely to commit future crimes; and (5) Tracy is in need of correctional treatment that can best be provided by commitment to a penal facility. In *Smylie v. State,* 823 N.E.2d 679 (Ind.2005), *cert. denied* — U.S. —, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005), our supreme court held that *Blakely* applies

retroactively to all cases on direct review at the time that *Blakely* was announced even if a defendant failed to object to his sentence in the trial court. *Clark v. State,* 829 N.E.2d 589, 590 (Ind.Ct.App.2005).

■ The United States Supreme Court issued *Blakely* on June 24, 2004, and Tracy's sentencing hearing was held on August 11, 2004, almost two months later. Further, the record shows that Tracy did not object to his sentence at any time before the trial court. Because the record shows that Tracy failed to object to his sentence in the trial court, Tracy has forfeited this issue for appellate review. *See id.; see also Gornick v. State,* 832 N.E.2d 1031, 1033–34 (Ind.Ct.App.2005), *trans. denied; but see Muncy v. State,* 834 N.E.2d 215, 218 (Ind.Ct.App.2005) (Barnes, J., concurring in part and dissenting in part) ("With respect to defendants sentenced before *Smylie* was decided [on March 9, 2005], I do not agree that there is waiver or forfeiture of a *Blakely* claim for failing to object to the trial court.").

■ Notwithstanding this forfeiture, Tracy still cannot prevail. A single aggravating circumstance can justify the imposition of an enhanced sentence. *Powell v. State,* 769 N.E.2d 1128, 1135 (Ind.2002), *reh'g denied; see also Morgan v. State,* 829 N.E.2d 12, 15–16 (Ind.2005). Under *Blakely,* prior convictions may be used to enhance a defendant's sentence without a finding of additional facts by a jury. *Williams v. State,* 830 N.E.2d 107, 113 (Ind.Ct.App.2005), *trans. denied.* The record shows that Tracy has eight prior convictions and three probation violations in three different states.[8]

---

8. Tracy's Pre–Sentence Investigation Report details the following convictions: Possession of Marijuana in 1982; Malicious Destruction of Personal Property in 1982; Attempted Third Degree Criminal Sexual Conduct in

1983; Delivery of Marijuana in 1984; Robbery in 1985; Vehicle Theft in 1989; Disorderly Conduct in 1991; and Possession of a Controlled Substance in 1994. It appears that five of these are felonies. The PSI also

■ As for the aggravators that Tracy is likely to commit future crimes and that he is in need of correctional treatment that can best be provided by commitment to a penal facility, our supreme court has recently observed that a defendant's Sixth Amendment rights "are not implicated when the language of an aggravator is meant to describe the factual circumstances, not to serve as a fact itself." *Morgan*, 829 N.E.2d at 17. Giving as an example the aggravator "failed to rehabilitate" or "failed to deter," the court noted that "[s]uch observations merely describe the moral or penal weight of actual facts. The 'fact' of being undeterred is not established by a statement to that effect, but rather by the underlying fact of prior convictions." *Id.* The court concluded that "the use of such underlying factors to support an aggravator does not require the independent judicial fact-finding at issue in *Blakely*." *Id.* Rather, it reflects the efforts of a judge to concisely describe what the underlying facts mean and why they demonstrate that a particular defendant deserves an enhanced sentence. *Id.* at 17–18. Accordingly, the court held as follows:

> Because the use of underlying facts to support an enhanced sentence does not violate the Sixth Amendment requirements of *Blakely* by allowing impermissible independent judicial fact finding, we hold that sentences enhanced by aggravators whose language is not specifically found by a jury or admitted by the defendant, are not necessarily impermissible so long as the aggravator in question was 1) supported by facts otherwise

admitted or found by a jury and 2) meant as a concise description of what the underlying facts demonstrate and therefore relies upon a legal determination otherwise reserved as a power of the judge.

*Id.* at 18.

■ Here, Tracy's sentences were enhanced in part because the trial court concluded that he is likely to commit future crimes and that he is in need of correctional treatment that can best be provided by commitment to a penal facility, neither of which was found by the jury or admitted by Tracy. However, these are not impermissible considerations because they are supported by Tracy's prior convictions and were meant as a concise description of what his prior convictions demonstrate. Although "[t]hey cannot serve as separate aggravating circumstances," *Morgan*, 829 N.E.2d at 17, the trial court properly considered Tracy's likelihood to commit future crimes and the fact that he is in need of correctional treatment that can best be provided by commitment to a penal facility because they are legitimate observations about the weight to be given to Tracy's criminal history. *See id.; see also Neff v. State*, 832 N.E.2d 1006, 1011 (Ind.Ct.App. 2005) (concluding that the risk that the defendant will reoffend is not a separate aggravator but a "legitimate observation[ ] about the weight to be given to [the defendant's] criminal history"), *trans. pending*. The trial court did not err in enhancing the sentences for Tracy's felony convictions.[9]

reports probation violations in 1983, 1984, and 1991.

9. Tracy also argues that "the rule of Lenity prohibits" the trial court from enhancing his sentences based on his prior convictions. Appellant's Br. p. 12. Specifically, Tracy asserts that his prior convictions were used to prove him to be a habitual offender *and* to prove

him to be a serious violent felon. Therefore, Tracy's argument continues, the trial court should not have used his prior convictions a third time to enhance his sentences. The record shows that only one of Tracy's prior convictions was used to prove him to be a serious violent felon and that four or five convictions were used to prove him to be a

### III. Appropriateness of Sentence

■ Tracy last contends that his 107–year sentence is inappropriate. This Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Although appellate review of sentences must give "due consideration" to the trial court's sentence because of "the special expertise of the trial bench in making sentencing decisions," *Bennett v. State*, 787 N.E.2d 938, 949 (Ind.Ct.App.2003), *trans. denied*, Appellate Rule 7(B) is "an authorization to revise sentences when certain broad conditions are satisfied." *Neale v. State*, 826 N.E.2d 635, 639 (Ind.2005).

■ The nature of Tracy's offenses are that law enforcement authorities in Dearborn County were alerted to be on the lookout for Tracy, who was wanted for crimes in Marion County and who was considered to be armed and dangerous. Indeed, Tracy told Lucinda Updike two days before that if he encountered the police, "[h]e would kill them." Tr. p. 288. When Officer Daugherty spotted Tracy driving on U.S. 50 in Dearborn County, he followed him and eventually ordered him to show his hands. However, Tracy sped off, and a high-speed chase ensued. Tracy weaved in and out of traffic in a heavily congested area of Dearborn County, putting citizens at risk. He also fired several gunshots, one of which struck Officer

Daugherty in the thigh. Indeed, Tracy had multiple loaded weapons in his vehicle, including a sawed-off shotgun. After shooting Officer Daugherty, Tracy continued to lead the police officers on the high-speed chase. And when the stop sticks deflated Tracy's tires, he exited his vehicle and fled on foot with his gun.

Tracy's character is best evidenced by his lengthy criminal history, which spans three states and includes approximately eight convictions and three probation violations. Tracy also had several charges, including murder, pending in Marion County. In addition, after the shooting, Tracy made statements to the news media that his mistake in this case was having poor aim. Tracy also made derogatory statements to Officer Daugherty upon leaving the courtroom following his conviction.

■ After due consideration of the trial court's decision, we cannot say that Tracy's 107–year sentence is inappropriate in light of the nature of his offenses and his character. As such, we decline his invitation to reduce his sentence.[10]

Affirmed.

SULLIVAN, J., and FRIEDLANDER, J., concur.

habitual offender although only two are required. Tracy's criminal history consists of more than this; rather, it consists of eight convictions and three probation violations. In addition, Tracy has pointed to no authority that provides that a trial court cannot use a defendant's prior convictions to enhance his sentence when all or some of those convictions have already been used to prove a defendant to be a serious violent felon and to be a

habitual offender. We decline to hold that the Rule of Lenity prohibits such use.

10. Tracy also argues that his sentence violates Article I, Section 16 of the Indiana Constitution, which provides, "All penalties shall be proportioned to the nature of the offense." However, Tracy has waived this argument for failure to present a cognizable argument. *See* Ind. Appellate Rule 46(A)(8)(a).