ATTORNEYS FOR APPELLANT
Stephanie C. Doran
Kokomo, Indiana

Teresa D. Harper
Bloomington, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

_____

No. 12S02-0606-CR-232

KYLE NEFF,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Clinton Circuit Court, No. 12C01-0312-MR-00494
The Honorable Steven R. Nation, Special Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 12A02-0411-CR-920

_____

**June 27, 2006**

**Shepard, Chief Justice.**


This appeal raises familiar questions regarding the permissibility of aggravators used in sentencing a criminal defendant. It also raises the novel question of whether the appropriate remedy when aggravators are found improper is always remand with opportunity for the State to prove to a jury those aggravators found improper under Blakely.  We conclude the Court of Appeals was correct simply to revise Neff's sentence.

## Facts and Procedural History

The State charged Neff for his role in helping Elizabeth Balser and Jonathan Yates lure Tabitha Raines to a city park and kill her over a drug dispute. In April 2004, Neff and the State agreed that the prosecution would drop all counts against him except for aiding, inducing, or causing battery as a class C felony if Neff pled guilty to that count and testified against Balser and Yates. The State also granted Neff use and derivative use immunity for his testimony against them. Neff testified against Balser in accordance with the plea agreement, but the jury acquitted. The State dismissed the charges against Yates.

In October 2004, Neff came before the court for sentencing. At the sentencing hearing, the judge identified several mitigating facts, including that incarceration would impose undue hardship on Neff's family, that Neff testified against Balser, and that he pled guilty. As aggravating circumstances, the court cited Neff's criminal record,[1] his failure to "obtain rehabilitative treatment" for his drug use, the failure of prior punishments to rehabilitate him, a substantial risk that he would re-offend, and Neff's commission of the crime while on probation. (Tr. Sent. Hr'g at 54-55.)

The judge articulated his impression of Neff's demeanor and behavior as it related to the crime and the weight to be assigned to the aggravators. In doing so, the judge made apparent reference to Neff's testimony in the Balser trial, saying:

> Everyone has said now that [Neff's unwillingness to take responsibility for his actions] has changed and that you are now trying to now go forward with your life. I am impressed with the fact though that your testimony in the Elizabeth Balser case where today you have talked about Tabitha as your friend but I am still startled by your testimony that you took cigarette breaks between the killing of her and delivering her body into the river. I cannot imagine any definition of

---

[1] Neff's criminal history consists of two class D Felony convictions for theft and a class A Misdemeanor conviction for possession of marijuana. Neff also has a probation violation for one of the theft charges. (Appellant's App. at 169.)

2

friendship that would include not being appalled by the killing of your friend and not taking responsibility at that point.

(Tr. Sent. Hr'g at 54.)

Finding the aggravating circumstances outweighed the mitigating, the court sentenced Neff to an eight-year term, adding the maximum allowable four years to the presumptive sentence for class C felonies. It permitted Neff to serve the last two years of his sentence in a community corrections facility.

On appeal, Neff has argued that the trial court improperly considered his immunized testimony and that his sentence violated his Sixth Amendment rights as defined in Blakely v. Washington, 542 U.S. 296 (2004). The Court of Appeals agreed that the trial court had improperly considered Neff's testimony during sentencing and that all the aggravators used by the trial court, except Neff's criminal history, were invalid. Neff v. State, 832 N.E.2d 1006, 1008, 1010 (Ind. Ct. App. 2005) vacated. It then reweighed the mitigators against Neff's criminal history and revised Neff's sentence to a six-year term, the last two of which were to be spent in a community corrections work release program. Id. at 1012.

The State sought transfer, contending among other things that the Court of Appeals erred in revising Neff's sentence without remand to the trial court for the option to prove additional aggravators before a jury. (Pet. Transfer at 1-2.) We grant transfer to consider subsequent developments in our case law and the question just posed.

**Immunized Testimony**

The State argues that the trial court did not improperly rely on Neff's immunized testimony during sentencing because "the court made no indication that the Defendant's prior testimony supported any of the aggravating circumstances." (Pet. Transfer at 6-7.) Whether or not the court made explicit reference to a particular aggravator in discussing Neff's immunized testimony, it is apparent that the immunized testimony came to bear as the court worked to

3

assign appropriate weight to the aggravating and mitigating circumstances. We summarily affirm the Court of Appeals' holding regarding use of that testimony. Ind. Appallate Rule 58(A).[2]

## Two Aggravators Not Really Separate Items

Based on our ruling in Morgan v. State, 829 N.E.2d 12 (Ind. 2005), the Court of Appeals correctly disregarded, as separate aggravators, the trial court's finding that previous punishment had failed to rehabilitate Neff, and that he posed a significant risk to re-offend. Neff, 832 N.E.2d at 1010-11. In Morgan we held that aggravators such as "failure to rehabilitate" and "risk to re-offend" are properly categorized as conclusory "observations about the weight to be given to facts." 829 N.E.2d at 17. As such, they "merely describe the moral or penal weight of actual facts" and do not stand as separate aggravators when the factual basis that supports the conclusion also serves as an aggravator. Id. See also Trusley v. State, 829 N.E.2d 923, 927 (Ind. 2005).

## Probation is a Permissible Aggravator

The Court of Appeals noted the split among its own panels as to whether the fact that a criminal defendant was on probation when he or she committed an offense needed to be admitted or found by a jury beyond a reasonable doubt before it could be considered in aggravation consistent with Blakely. Neff, 832 N.E.2d at 1011-12 vacated. It held that the trial court's finding that Neff was on probation at the time of the instant offense was improper. Id.

---

[2] At least some of the facts considered by the trial court during this colloquy were established through the factual basis of Neff's guilty plea, and therefore were admitted by the defendant. (Tr. Guilty Plea Hr'g at 13-15) (admitting that he had helped lure Raines to the place she was killed and provided a gun to help in the murder.) Similar statements were also referred to by the trial judge during the sentencing hearing (Tr. Sent. Hr'g at 54), but this just seems to support the conclusion that this judicial colloquy was meant to assign weight to aggravators. Consequently, the facts, such as they are, might have supported an aggravator such as "the nature and circumstances of the crime," but the judge found no aggravators other than those four we have listed.

4

We have since decided <u>Ryle v. State</u>, 842 N.E.2d 320 (Ind. 2005), holding that probationary status need not to be proven to a jury beyond a reasonable doubt before it can be considered in aggravation. The trial court's use of this aggravator was thus permissible.

**Reweighing by Court of Appeals Proper**

The State's final contention is that the Court of Appeals erred in revising Neff's sentence without affording it the opportunity to prove additional aggravators before a jury. The State relies on our decisions in <u>Blakely</u>-related cases such as <u>Smylie</u> and <u>Trusley</u>, in which, after invalidating certain aggravators, we remanded to the trial court with instructions to allow the State to seek to prove those aggravators. See <u>Smylie v. State</u>, 823 N.E.2d 679, 687 (Ind. 2005); <u>Trusley v. State</u>, 829 N.E.2d 923, 927 (Ind. 2005).

On the other hand, in three other <u>Blakely</u>-related cases we revised the sentences imposed without remanding for re-sentencing. See <u>Young v. State</u>, 834 N.E.2d 1015, 1017-18 (Ind. 2005); <u>Morgan v. State</u>, 829 N.E.2d 12, 18 (Ind. 2005); <u>Williams v. State</u>, 827 N.E.2d 1127, 1129 (Ind. 2005).

Our decisions in these cases obviously do not reflect an adherence to a single determinative practice in concluding whether or not to remand a case with the option to prove additional aggravators. Rather, they indicate that the decision is the result of a complex calculus that must take account of numerous considerations. We illustrate that calculus here in the hope that it will provide basic guidelines when dealing with <u>Blakely</u>-related litigation.

In both <u>Smylie</u> and <u>Trusley</u>, we invalidated numerous aggravators as they were never submitted to a jury nor admitted by the defendant. In <u>Smylie</u>, we held improper all the aggravators used to impose the enhanced sentences. Those aggravators were "1) Smylie's pattern of criminal activity, 2) his position of trust with the victim, 3) the effect of the crime on the victim, and 4) the imposition of a reduced or suspended sentence would depreciate the seriousness of the crime." 823 N.E.2d at 682. In <u>Trusley</u>, we invalidated three of the five

5

aggravators found by the trial court. In particular, we held that the fact "that Trusley was in need of incarceration; that the imposition of anything other than an enhanced sentence would depreciate the seriousness of the crime; and the nature and circumstances of the crime" could not be used to impose an enhanced sentence. 829 N.E.2d at 927.

In both cases at least one of the improper aggravators was a fact or represented a judicial statement about the weight to be assigned to an underlying fact. It was possible that the facts necessary to support the aggravators could have been properly established consistent with the Sixth Amendment. The State might well have attempted to do so had it been clear at the time of sentencing that Blakely required proving such facts to a jury. But of course when Smylie and Trusley were sentenced, the Supreme Court had not handed down Blakely, and we had not yet addressed the issue. In other words, there was no indication the State needed to follow a procedure for proving the aggravators beyond a reasonable doubt.

We held in Smylie that a defendant should not be denied the opportunity to challenge her sentence under Blakely because of a failure to make a specific objection at trial. Smylie, 823 N.E.2d at 687-91. We based our decision in that matter on the conclusion that "[b]ecause Blakely represents a new rule that was sufficiently novel that it would not have been generally predicted, much less envisioned to invalidate part of Indiana's sentencing structure, requiring a defendant or counsel to have prognosticated the outcome of Blakely or of today's decision would be unjust." Id. at 689. Similarly, the weighty nature of the State's penal interest has sometimes made it seem proper to remand for re-sentencing with the opportunity to prove aggravating facts when the State sought an enhanced sentence, but did not seek to prove the aggravating facts beyond a reasonable doubt.

Although it is fair to remand for re-sentencing when an appellate court invalidates an aggravator because the underlying fact was not proven to the standard set in Blakely, we see little grounds for providing the State with the opportunity to prove new aggravators that had not previously been presented before the trial court. Consequently, the State should not be afforded a second bite at the apple by being permitted to attempt to prove new aggravators beyond those initially presented to, and found by, the trial court.

6

That was the situation in <u>Morgan v. State</u>, 829 N.E.2d 12 (Ind. 2005). In that case, we invalidated two of the four aggravators found by the trial court. The State readily conceded one of those aggravators was improper under the sentencing statute as it existed, and the other constituted a judicial statement about the weight of the permissible aggravators rather than an independent basis for enhancement. <u>Id.</u> at 18. Unlike in <u>Smylie</u> and <u>Trusley</u>, the invalidated aggravators were not the kind that could be supported by some fact. In <u>Morgan</u>, there were simply no facts that could support the aggravators at all. The error in Morgan's sentence thus was not that the State understandably failed to follow a non-existent procedure, but that no matter what procedure was followed, the aggravators were, themselves, invalid. As there was nothing additional that the State could prove to support the invalidated aggravators, and because it would be unfair to permit the State to attempt to prove aggravating facts not previously considered, there was no reason to remand the case with the opportunity to re-sentence.

This is also the case here. The one invalid aggravator — the use of the immunized testimony — is founded upon facts that the trial court could not consider. In addition, as in <u>Morgan</u>, some of the aggravators used by the trial court were not actually aggravators, but rather judicial statements about the weight of another fact. These too could not be reconsidered. There is no reason, then, to remand the case as the State could not prove any previously presented fact that would support the reinstatement of the aggravators. In such situations, in the interests of judicial economy, it is a more efficient solution for the appellate court simply to reweigh the aggravators and mitigators, and we sanction that course.

We note also that there may be situations in which the appellate court need not remand because a constitutionally permissible method exists to impose a sentence similar to that imposed by the trial court. Such instances will likely arise when a defendant is sentenced for numerous crimes and the court orders a number of concurrent, enhanced sentences. We held in <u>Smylie</u> that Indiana's system for imposing consecutive sentences is not invalid under <u>Blakely</u>. 823 N.E.2d at 686. Consequently, even if an aggravator is not found beyond a reasonable doubt, and thus is incapable of supporting an enhanced sentence, the aggravator may still be used to impose consecutive sentences. <u>Id.</u> If a combination of consecutive, non-enhanced sentences can be

made that produces a substantively similar sentence to that enhanced sentence imposed by the trial court, there is little reason to remand, as nothing meaningful can be achieved by doing so.

Such was the result in both Young and Williams. In those cases we determined that the aggravators were unable to support the enhanced sentences imposed, but could support a sequence of consecutive sentences that matched exactly, or very nearly approximated, the original sentence.[3] A similar solution was indicated as permissible in Estes v. State, 827 N.E.2d 27, 29 (Ind. 2005) (per curiam). We see no reason why such a course should not be followed when it constitutes a practical and just solution.

Of course, in the background behind each of these permissible remedies is the constitutional and rule-based authority of this state's appellate courts to review and revise sentences. IND. CONST. art. VII, §§ 4, 6; Ind. Appellate Rule 7(b). With that power comes, as we noted in Morgan, the need to be mindful that the mere existence of an aggravator "does not mean that sentencing judges or appellate judges need do no thinking about [the] weight" to be assigned to aggravators. 829 N.E.2d at 15 (emphasis added). The ends of justice require that both trial and appellate judges give careful consideration to the weight assigned to aggravators in every case. Although the guidelines drawn out above will be applicable in most cases, there may be some instances where they cannot be made to apply, or where their application will result in an improper outcome. In such instances it is entirely proper for the Court of Appeals, or this Court, to revise a criminal sentence after finding that certain aggravators are impermissible and that the sentence is therefore no longer appropriate "in light of the nature of the offense or character of the offender." Ind. Appellate Rule 7(b).

Indeed, in cases such as this one, or Morgan, where the invalidated aggravators could not be supported by any fact, revision of the sentence by the appellate court is the most obvious and efficient solution. The same would apply in cases such as Young and Williams. Nevertheless,

---

[3] Williams was originally sentenced to twelve years for aggravated battery and three years for criminal confinement. Both sentences were enhanced and scheduled to run concurrently. After invalidating the aggravators, we imposed the presumptive terms for each crime and ordered them run consecutively for a total of eleven and a half years. Williams, 827 N.E.2d at 1128-29. In Young, we revised the sentences of numerous felony convictions to the presumptive and then ran the sentences consecutively. In doing so, we matched the twenty-four year term for executed time imposed by the trial court, and came within two years of the thirty-six year term of suspended time. 834 N.E.2d at 1017-18.

8

the revision power should not be exercised without due consideration to the permissible aggravators and the appropriateness both of the original and revised sentences. In this case, the Court of Appeals carefully and methodically examined Neff's criminal history, and weighed that history against the mitigating circumstances found by the trial court. Neff, 832 N.E.2d at 1012. Even though the Court of Appeals improperly failed to consider Neff's probationary status as an aggravator, we do not believe that this aggravator affects the Court's calculation in determining that the presumptive term, plus two years to reflect facts in aggravation, was appropriate. We therefore affirm the imposition of the revised term.

## Conclusion

We affirm the decision of the Court of Appeals in all respects except its holding and reasoning regarding consideration of Neff's probationary status. As the Court of Appeals did, we therefore remand to the trial court with instructions to impose a six-year term. That term should reflect four years executed time and two years served in direct commitment to the Hamilton County Community Corrections Work Release Program.

**Dickson, Sullivan, Boehm, Rucker, JJ., concur.**